GREAT NORTHERN RAILWAY COMPANY, a Corporation, Respondent, v. J. C. DUNCAN, as Treasurer of the County of Towner, State of North Dakota, and the County of Towner, a Municipal Corporation, Appellants.

(176 N. W. 992.)

**Taxation — levy — amount limited by.**

1. Section 1 of chapter 254, Session Laws of 1915, which provides for limiting taxes levied at a certain rate in mills during the years 1915 and 1916, is construed and held to limit the taxes that may be extended by the county auditor for school purposes, under § 1224, Compiled Laws of 1913.

**County auditor — duty.**

2. A county auditor is an officer "whose duty it may be under existing laws to levy taxes at a certain rate in mills," within § 1 of chapter 254 of the Session Laws of 1915.

**Taxation.**

3. Chapter 254 of the Session Laws of 1915 has no application to the extension of taxes previously levied for the discharge of pre-existing indebtedness.

**State Constitution — legislative power over municipal corporation — con-**

4. Section 183 of the Constitution, which limits the authority of the various political subdivisions to incur debts in excess of 5 per cent upon the assessed valuation of the taxable property therein, is self-executing as a limitation upon the power to incur debts.

**State Constitution — debt limit — self-executing.**

**tracting debts — limit of debt.**

5. Section 183 of the Constitution, when so construed as to harmonize with § 130, which confers upon the legislature power to provide for the organization of municipal corporations and restrict "their powers as to levying taxes and assessments, borrowing money and contracting debts," is not so far self-executing as to confer upon political subdivisions the power or the right to contract indebtedness up **to 5** per cent of the assessed valuation without legislative authority.

**Constitutional provisions — cities — municipal corporations.**

6. The proviso contained in § 183 of the Constitution, to the effect that incorporated cities may become indebted in additional amounts for the purpose of furnishing water supply or constructing sewers, does not render municipal corporations immune from additional restrictions concerning municipal indebtedness that may be imposed by legislation.

**Constitutional provisions — legislative act.**

7. The requirements of § 61 of the Constitution, to the effect that no bill shall embrace more than one subject which shall be expressed in its title, are not violated where the title fairly indicates the general scope of a bill designed to accomplish a single object.

**Legislative act, title of.**

8. Where a legislative bill considered in the light of facts generally known is designed to accomplish one general object, and this is fairly indicated in the title, the title is not multifarious within the inhibition of § 61, although it indicates that several subjects related to the general object are embodied in the bill.

Opinion filed June 3, 1919.

Appeal from the District Court of Towner County, *Buttz*, J.

Affirmed.

*William Langer*, Attorney General, and *George K. Foster*, Assistant Attorney General, for appellants.

It is not necessary to grant a hearing on a performance on a ministerial function such as levying taxes against property which had been duly authorized. Hagar v. Reclamation Dist. 111 U. S. 708, 28 L. ed. 572; Amery v. Keokuk, 72 Iowa, 704, 30 N. W. 780; Gillette v. Denver, 21 Fed. 824; Lower Kings etc. Dist. v. Philips, 108 Cal. 314, 39 Pac. 630, 41 Pac. 335; Hodge v. Muscatine Co. 196 U. S. 280, 49 L. ed. 481.

If an act embraces two or more subjects, and two or more of the same are expressed in the title, the whole act is void. 1 Lewis's Sutherland Stat. Constr. 2d ed. §§ 103, 144.

When a contract is made with a municipal corporation on the faith that taxes will be levied, legislation repealing or modifying the taxing power of the corporation, so as to deprive the holder of the contract of all adequate and efficacious remedy, is within the constitutional inhibition as to the impairment of the obligations of contracts. 6 R. C. L. title Constitutional Law, § 338, note 7; Van Hoffman v. Quincy, 4 Wall. 535, 18 L. ed. 403; Buttz v. Muscatine, 8 Wall. 575, 19 L. ed. 490; Wolff v. New Orleans, 103 U. S. 358, 26 L. ed. 395; Louisiana v. New Orleans, 109 U. S. 285, 27 L. ed. 936, 3 Sup. Ct. Rep. 211; Louisiana v. Police Jury of St. Martina, 111 U. S. 716, 28 L. ed. 574, 4 Sup. Ct. Rep. 648; Goodale v. Fennell, 27 Ohio St. 426, 22 Am. Rep. 321.

*Flynn & Traunor* and *Murphy & Toner*, for respondents.

A constitutional provision must be liberally construed, and if all parts of a statute have a natural connection and reasonably relate directly or indirectly to one general and legitimate subject of legislation, the act is not open to objection no matter how multifarious the provisions and details. Re Kol, 10 N. D. 493; 24 Am. & Eng. Enc. Law, 574, 575, 1 Sutherland, Stat. Constr. pp. 198, 287; 35 Cyc. 1022, 1044; Paine v. Dickey, 8 N. D. 581; State v. Haas, 2 N. D. 202; State v. Soodmansee, 1 N. D. 246; State v. Home Society, 10 N. D. 493; State v. Poole, 18 N. D. 101; School Dist. v. King, 20 N. D. 614; State v. Nomland, 3 N. D. 427; Eaton v. Guarantee Co. 11 N. D.

79; Geer v. County, 97 Fed. 435; Henderson v. State, 137 Ind. 552, 24 L.R.A. 469; Marioneaux v. Cutler, 91 Pac. 355; State v. Sloan, 66 Ark. 575, 53 S. W. 47.

BIRDZELL, J. This is an appeal from an order entered in the district court of Towner county, overruling a demurrer to a complaint. The action is one to recover certain taxes alleged to have been paid by the plaintiff under protest. The facts alleged in the complaint may be briefly stated as follows: In the year 1915 the county auditor of Towner county levied a mill tax for school purposes upon the property of the plaintiff, acting under the authority expressed in § 1224, Compiled Laws of 1913.

The tax is $114.69 in excess of the amount which the auditor would be authorized to levy under chapter 254 of the Session Laws of 1915, if the provisions of this chapter were applicable, and if the authority contained in § 1224, Compiled Laws of 1913, is restricted by the later enactment. The tax was paid under protest.

It is not disputed that the complainant states a good cause of action provided the plaintiff's theory as to the meaning and applicability of the statutes involved is correct, and provided chapter 254 of the Session Laws of 1915 is constitutional. The controlling statutory provisions are as follows:

Section 1224, Compiled Laws of 1913: "The county auditor of each county shall at the time of making the annual assessment and levy of taxes levy a tax of $1 on each elector in the county for the support of public schools, and a further tax of 2 mills on the dollar on taxable property in the county, to be collected at the same time and in the same manner as other taxes are collected, which shall be apportioned by the county superintendent of schools among the school districts of the county."

Chapter 254 of the Session Laws of 1915, in so far as applicable, reads: "Section 1: The board of county commissioners of any county, or any county officer, any township board, or any township officer, any village board, or any village officer, any city council or city commission, park board, or board of education of any city, or any officer thereof, or the officers of any school district, or any other taxing district, or any officer thereof, that is authorized, or whose duty it may be, under

the laws of the state, to fix or make any levy on the assessed valuation of property for the purposes of taxation, shall not during the years 1915 and 1916 levy any amount for purposes of taxation that will exceed by more than 5 per cent for the year 1915, and 10 per cent for the year 1916, the amount that such board or officer was authorized to levy on the assessed valuation of 1914. Any of the aforesaid officers, whose duty it may be under existing laws to levy taxes at a certain rate in mills, or fraction thereof, shall not levy during the years 1915 and 1916 at any rate that will produce revenue in excess of 105 per cent and 110 per cent, respectively, of that which would be produced by the levy of the prescribed rate upon the assessed valuation of 1914; . . ."

Section 2 provides that the salaries of officials which are determined by the amount of the assessed valuation of the property within any political subdivision shall not be increased during the years 1915 and 1916 beyond the amount authorized on the basis of the assessed valuation for the year 1914. Section 3 likewise continues substantially the existing assessed valuation basis as to all matters of official right, duty, or authority, where their exercise or obligatory character is dependent upon assessed valuation of property. Section 4 likewise continues the existing assessed valuation as a basis for the debt limits of political subdivisions up to July 1, 1917, allowing, however, for 10 per cent increase annually, where warranted by a higher assessed valuation; and § 5 repeals "all acts or parts of acts in conflict. . . ."

While the respondent contends that § 1224 of the Compiled Laws of 1913 provides an unconstitutional method of levying taxes for the support of the schools, it is not necessary to consider the merits of the contention, for the reason that, in this action, it only seeks to recover the amount of such taxes in excess of that authorized by chapter 254 of the Session Laws of 1915. Having reached the conclusion, for reasons which will later be assigned, that the respondent is entitled to recover the excess sued for without regard to the alleged unconstitutionality of § 1224, it is neither necessary nor proper to determine the constitutional question presented by the respondent. In suing for the excess only, the plaintiff, in the complaint as framed, tacitly admits the authority to levy a proper amount in the manner provided for in § 1224. With the question of the constitutionality of § 1224 thus elim-

inated, there are but two questions presented for decision. The first involves the interpretation of § 1 of chapter 254 of the Session Laws of 1915; and the second, the constitutionality of the chapter.

It is argued that the county auditor is not, within the language of § 1, an "officer . . . that is authorized, or whose duty it may be, under the laws of the state, to fix or make any levy on the assessed valuation of property for purposes of any taxation," and whose authority is so limited that the amount levied may not exceed by more than 5 per cent for the year 1915 the levy of the year before. And to this argument is added the further contention (which, if sound, would preclude the plaintiff's recovery) that the county auditor, not being an officer authorized to fix or levy taxes within the above-quoted language, is not restricted by the immediately following sentence, which provides as follows: " . . . Any of the aforesaid officers, whose duty it may be under existing laws to levy taxes at a certain rate in mills, or fraction thereof, shall not levy during the years 1915 and 1916 at any rate that will produce revenue in excess of 105 per cent and 110 per cent respectively, of that which would be produced by the levy of the prescribed rate upon the assessed valuation of 1914."

Therefore, the contention runs, chapter 254 is wholly inapplicable to the duties of a county auditor in connection with the levy of the mill tax for school purposes under § 1224. From this it would follow that the county auditor must extend a levy of 2 mills upon all property assessed, regardless of any increase in the valuation.

It is perfectly obvious that the last sentence quoted above, which refers to officers whose duty it may be to levy taxes at a certain rate in mills, could not refer to any officer or set of officers in whom were vested any discretion in the matter of levying taxes. For the very requirement of the levy "at a certain rate in mills" excludes the idea of discretion on the part of the officer so charged with the duty. It is manifest that whatever discretion is involved in the levying of taxes at certain prescribed rates is one which was exercised in the past by the legislative body that fixed the rate and imposed the duty. So, to adopt the appellants' contention in this respect would be to deprive the sentence in question of all meaning, because it would be made inapplicable to every existing mill tax on the property assessed during 1915 and 1916 at the valuation determined in those years,—a result

which obviously the legislature was endeavoring to avoid. It is our opinion that the proper interpretation of the language in question is that any of the aforesaid county officers, etc., whose duty it may be to levy taxes at a certain rate in mills shall be restricted as provided in the act.

A literal interpretation should not be adopted where the effect is certain to defeat the obvious intention; but even if we were inclined to adopt a strict, literal interpretation, it is not at all certain that the appellants have properly sensed the literal meaning. It will be noticed that the antecedents of the expression "aforesaid officers" include any county officer whose duty it may be either to fix or make any levy. It may well be that the county auditor does not have authority to exercise discretion in the making of a tax levy, but it is nevertheless made his duty to fix levies where officers making the levies exceed the limitations prescribed by law. Section 2148, Compiled Laws of 1913, requires the levy of taxes in specific amounts rather than according to a rate per cent; and among other things it is provided that " . . . the rate per centum of all taxes, except the state taxes and such other taxes, the rate of which may be fixed by law, shall be calculated and fixed by the county auditor, according to the limitations hereinafter prescribed; provided, that if any county, city, town or school district shall return a greater amount than the prescribed rate will raise, then the county auditor shall only extend such amount of tax as the limited rate will produce."

Thus is the county auditor made an officer charged with the duty of *fixing* a levy when the same is excessive. Furthermore, unless the county auditor were referred to by the designation "any county officer," no reason is perceived why the legislature would have included this designation in the enumeration of officers to fix or make a levy, for they had already referred to the board of county commissioners, who have the sole power to exercise discretion in levying county taxes.

If the question were otherwise doubtful, all doubt should be dispelled by the fact that in § 1224, Compiled Laws of 1913, the legislature referred to the duty of the auditor to extend both the school poll and the 2-mill taxes as the levying of a tax, and in § 1 of chapter 254 the same terminology is employed with apparent reference to the same subject-matter.

For the foregoing reasons we entertain no doubt that the legislature intended to limit the authority of the county auditor to extend the taxes provided for in § 1224 to such an amount as would result in turning in to the county tuition fund revenues which would not in 1915 exceed 105 per cent of the like revenues of the year before.

This brings us to the question of the constitutionality of chapter 254 of the Session Laws of 1915. It is claimed that the act is unconstitutional for the following reasons:

(1) That it violates the rights of the people of incorporated cities to incur indebtedness in excess of 5 per cent of the assessed valuation of the property.

(2) That it violates the rights of the various municipal corporations enumerated in § 183 of the Constitution to levy taxes to pay the interest and principal on pre-existing indebtedness.

(3) That it impairs the obligation of contracts between bond creditors and the various municipalities by limiting the debt-paying ability.

(4) That it violates § 61 of the Constitution with reference to singleness of subject.

The first contention, and to some extent the second and third also, are founded upon a misapprehension of the true meaning and effect of § 183 of the Constitution. This section provides a self-executing limitation upon the power of political subdivisions to contract indebtedness above "5 per centum upon the assessed value of the taxable property therein," with a proviso added "that any incorporated city may become indebted in any amount not exceeding 4 per cent on such assessed value, without regard to the existing indebtedness of such city for the purpose of constructing or purchasing waterworks . . . , or for the purpose of constructing sewers, and for no other purpose whatever." In our opinion, this section does not operate as a limitation upon the authority of the legislature to further restrict the powers of political subdivisions. By § 130 of the Constitution express authority is conferred upon the legislature to restrict the powers of municipal corporations "as to levying taxes and assessments, borrowing money and contracting debts." Section 183 must be so construed as to harmonize with § 130, and when so construed it operates only as a limitation, and not as a grant of authority, to incur debts and levy taxes.

The guiding principle for the construction of a constitutional pro-

42 N. D.—23.

vision such as § 183 of our Constitution is aptly expressed by Gray on Limitations of Taxing Power, § 2155a, page 113, as follows:

"In so far, as the constitutional debt limits are prohibitory in character, that is, in so far as they forbid the incurrence of debt beyond a certain amount, they are of course self-executing; no legislation is needed to carry them into effect and they invalidate, by their own vigor, debts incurred in violation of their provisions. All the cases so treat them.

"Those provisions of debt limitations which are in a sense permissive, such as that a county may by a vote of the electors incur debts not exceeding 10 per cent, or the like, are not self-executing, but require legislative action to carry them into effect. These provisions confer no debt-contracting capacity; they merely limit the legislative power to confer such capacity. Illustrating: A constitutional provision which forbade any county to donate bonds or money to railroads in excess of 10 per cent of the assessed valuation, *provided* that such donations might 'by a two-thirds vote' be increased 5 per cent, does not of itself authorize the county to increase the debt 5 per cent over the 10 per cent limit by a two-thirds vote, without express legislative authority, and bonds issued in excess of 10 per cent, without express authority, are void."

. Dillon on Municipal Corporations, 5th ed. § 191, has expressed the principle as follows: "The constitutional limitation *does not confer power to create indebtedness,* but acts as a limitation upon the power conferred by the charter of the municipality or by statute (Robertson v. Staunton, 104 Va. 73, 51 S. E. 178). . . . *And the legislature may impose additional restrictions or regulations upon the incurring of indebtedness."*

In so far as the second and third propositions are hinged upon the limitation of the power to levy taxes for the purpose of paying interest and principal on pre-existing indebtedness, and a consequent impairment of the obligations of contracts, the position of the appellants is clearly without merit. Under no construction of the law could it operate to reduce the ability of municipal corporations to incur or pay indebtedness below that which existed at the time the law was enacted, nor does it restrict the power to levy taxes to discharge pre-existing indebtedness.

Section 184 of the Constitution makes it the duty of the political subdivisions incurring indebtedness to provide, either before or at the time of incurring the debt, for the collection of annual taxes sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for payment are declared to be irrepealable until the debt be paid. Chapter 254 must be held to have been adopted in the light of this constitutional provision, and we fail to discover any provision therein that can, by fair construction, be held to violate § 184 by limiting the power of political subdivisions to levy taxes to pay indebtedness previously incurred.

The proper and natural presumption is that the discharge of pre-existing indebtedness was provided for at the time the indebtedness was incurred, and that the taxes are spread from time to time under irrepealable laws or ordinances adopted at the same time. Obviously there was no attempt to repeal any laws of this character. Where a certain levy is provided for by an irrepealable law, the act of levying is completed. All that remains for the future is to spread the levy in the tax lists. Doubtless large amounts of taxes are collected annually to discharge indebtedness incurred years ago and under levies which were made at the time to operate in future. Chapter 254 is only a limitation upon levies and indebtedness to be made or incurred subsequent to its enactment, and it is wholly inapplicable to previous indebtedness.

Section 61 of the Constitution provides that: "No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed."

It is contended that chapter 254 violates this section. The title of the bill is "A Bill for an Act to Limit Tax Levies During the Years 1915 and 1916, to Restrict Debt Limits, and Regulate Salaries of Officers, and the Rights and Duties of Officers Now Dependent upon Assessed Valuation." The argument is that the law singles out three distinct subjects and treats them separately; thus limiting the power of local taxation, the power to incur indebtedness, and the salaries of officers. Unless the three matters dealt with are so closely related as to constitute but separate parts of a consistent plan which is readily dis-

cernible in the act itself, when read in the light of the contemporary administration of public finance, it is open to the objection urged.

It is a rule of construction applicable to such constitutional provisions that they should be liberally construed to uphold proper legislation where all parts are reasonably germane to a central object or purpose. 36 Cyc. 1017, 1018; Lewis's Sutherland, Stat. Constr. § 115. The term "subject" as used in § 61 of our Constitution is generally held to mean the matter to which the statute relates. 36 Cyc. 1022. So that if the statute, when construed as a whole, be found to have been framed with one central object to which the apparently separate and distinct subjects treated are so related that the accomplishment of the single object may be said to be in a degree dependent upon the legislative treatment of the related matters so joined, the provision in question is not violated. 1 Lewis's Sutherland on Statutory Construction, § 118.

With reference to the necessity for a fairly liberal interpretation of such a provision as § 61 and one which at the same time shall faithfully observe and seek to prevent the evils attaching to attempted omnibus legislation, Lewis's Sutherland on Statutory Construction, 2d ed. vol. 1, § 143, says: "Similar subjects may be grouped and treated as a class for general legislation, embracing all or a part. There is evident in the later constitutions a strong preference for such legislation, and against special, where general acts are appropriate and practicable. Generalizations to answer all cognate wants require preparation and reflection. A particular need first attracts the attention of the legislator, and when he proceeds to frame a measure with reference to it, how comprehensive he will make it depends on his leisure, his courage, his capacity and his public spirit. *There is a marked difference between an act treating of individual subjects as such, and embracing more than one, and an act which aims at a single purpose involving a plurality of subjects, and concerning all of them or several of them.* The former is generally multifarious; the latter valid as dealing with a unity. . . . But where the legislation concerns separate things without unity in any consideration or purpose, it is within the constitutional inhibition."

It is well settled that constitutional provisions of the character of § 61 are not intended to restrict the "scope or magnitude of the single

subject of the legislative act" (1 Lewis's Sutherland, Stat. Constr. 2d ed. § 117), and neither are they controlling as to the form or the mere method of expressing the subject. State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89. As was said by the supreme 'court of Minnesota, in the case of Johnson v. Harrison, 47 Minn. 575–578, 28 Am. St. Rep. 382, 50 N. W. 923: " . . . . All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

A legislative bill may be sufficiently comprehensive to accomplish any legitimate legislative aim, and in the title the subject may express this aim in general terms or it may be constructed by linking together the various minor matters embraced within the single subject indicated in it.

The title in question contains a clear indication of legislation designed to affect, during the biennium of 1915–1916, tax levies, debt limits, and salaries of county officers,—all of which were dependent upon the amount of the assessed valuation; and, as the act is read, it is found to center about the apparent, single object of preserving substantially, with allowance for an approximate average of normal increase, the existing limitations and standards concerning all the matters dealt with for the period of two years. The legislature must be held to have been familiar with such facts as were generally known concerning the operation of the revenue system. It knew, therefore, that the state was annually levying taxes up to the full amount or in excess of its constitutional ability to levy under the existing assessed valuation, and that the legislative limitations upon the powers of political subdivisions, in respect to levying taxes and incurring indebtedness, had been made in the light of the then existing practice of valuing property for assessment at a low percentage of its true value. It knew, also, that the rate of any taxes that were required to be extended at a flat rate had been fixed in the light of the same practice, and that the salaries of county officers had been fixed, and even certain powers of political subdivisions conferred or withheld, according to the amount of assessed valuation. An instance of the latter sort was the power of counties to

levy taxes for the support of fairs. The legislature must have known, then, that all of these matters would be disturbed by any substantial increase in the assessed valuation of the property of the state above that which might be normally expected. They also knew that the state board of equalization was constantly confronted with a choice between increasing the percentage at which property in the state would be assessed so as to be able to legally raise sufficient revenues to be able to meet the needs of the state, thus inviting extravagance on the part of the political subdivisions whose powers would be suddenly and abnormally increased, or of incurring the risks incident to deficits and illegal state levies. In this situation it might well have been considered preferable to relieve the state board of equalization of such embarrassment by permitting a higher basis of assessed valuation to be adopted without disturbing existing financial and governmental arrangements dependent thereon, than to attempt to legislate anew concerning all such matters without the benefit of some experience under a higher assessed valuation basis. It is only by legislation of the character of the act in question that the legislative desire could be accomplished; unless each subject thus related to the general purpose were made the subject of a separate bill. But the constitutional provision in question does not require legislation by piecemeal. When the title of this bill is considered in the light of facts that were commonly known at the time, it is indicative of legislation designed to accomplish a single general object, and it is not, in our opinion, open to the objection that it embraces more than one subject.

Section 61 of the Constitution of North Dakota has been construed by this court in a number of cases, none of which, however, is directly in point upon the question presented in this case. In the last case in which the question was considered—State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924—a discussion of the meaning of § 61 and a review of the authorities on the subject, both in this state and elsewhere, will be found which will show that the conclusion above announced is well supported by the reasoning applied in the previous cases, and that the result is in harmony with the principles laid down. It is therefore unnecessary to refer more at length to the prior decisions and authorities.

The order appealed from is affirmed.

ROBINSON, J. (dissenting). This is an appeal from an order overruling a demurrer to the complaint. The complaint avers that in 1915 the county auditor levied a 2-mill tax of $114.69 against the property of the defendant, in excess of the amount authorized by law; that the levy was made without notice and contrary to chap. 254, Laws 1915; that the plaintiff paid the same under protest; wherefore, it demands judgment for $114.69 and interest.

The tax in question is levied by the statute, and not by the county auditor. The statute makes the levy and directs the county auditor of each county to levy or extend the tax upon all the taxable property in the county for the support of the common schools. Laws 1890, chap. 62, § 102, Comp. Laws, § 1224. The statute gives the county auditor no discretion. It merely commands him in each year to levy or extend against all property in the county a 2-mill tax for school purposes. Under this statute for thirty years the county auditors have extended a 2-mill tax against all taxable property in their county. If the plaintiff may recover the whole or a part of the 2-mill tax for years 1915 and 1916, so may every taxpayer in the state. The right to recover it is claimed under the Laws of 1915, chap. 254. Its title is: "An Act to Limit Tax Levies During Years 1915 and 1916, to Restrict Debt Limits, to Regulate Salaries of Officers and the Rights and Duties of Officers Now Dependent upon Assessed Valuation." Manifestly the title does embrace four subjects, entirely separate and distinct, contrary to § 61 of the Constitution. Hence the act is void.

Section 1 is that part of the act to limit tax levies during the years 1915 and 1916. It provides that no board of county commissioners or county officer whose duty it may be to fix or make any levy on assessed valuation of property shall, during the years 1915 and 1916, levy any assessment for purposes of taxation that will exceed more than 5 per cent or 10 per cent, the authorized levy on the valuation of 1914. Now, though it is not easy to guess the meaning of such a statute, the statute providing for several separate and distinct subjects, it does seem quite clear that the legislature never thought of interfering with the 2-mill school levy which had been in force during thirty years. But if such was the purpose of the legislature, still the complaint does not state facts sufficient to constitute a cause of action. It does not describe the property of the plaintiff or give the assessed

valuation in the years 1915 and 1916. It does not state the amount of the tax extended or levied in 1915, nor the sum of a 2-mill tax based on the assessment of 1914, with an addition of 5 per cent. It does not state facts from which it is possible for the court to determine that in 1915 the school levy was $114.69, or any sum in excess of 2 mills on the valuation of 1914, with an addition of 5 per cent. Hence the demurrer should be sustained.

GRACE, J. I concur in the result arrived at in the dissenting opinion of Justice Robinson.