SUNBEHM GAS, INC., A. G. Golden, and
Deka Minerals, a partnership, Plaintiffs
and Appellants,

v.

Kent CONRAD, Tax Commissioner,
Defendant and Appellee.

Civ. No. 10013.

Supreme Court of North Dakota.

Oct. 7, 1981.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for plaintiffs and appellants; argued by Frank J. Magill, Fargo.

Kenneth M. Jakes & Robert W. Wirtz, Asst. Attys. Gen., State Tax Dept., Bismarck, for defendant and appellee; argued by Jakes, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiffs, Sun-Behm Gas, Inc., A. G. Golden, and Deka Minerals, a partnership (hereinafter the Taxpayers), from an order of the District Court of Stark County, dated May 12, 1981, denying the Taxpayers' request for a writ of prohibition against the defendant, Kent Conrad, State Tax Commissioner, to restrain him from collecting oil extraction taxes under Initiated Measure No. 6 [approved by the voters on November 4, 1980 (S.L.1981, Chapter 649), and amended by the Forty-Seventh Session of the North Dakota Legislature].[1]

On appeal the Taxpayers, asserting that Initiated Measure No. 6 violates certain provisions of the North Dakota Constitution, have raised the following issues:

1. The relevant portions of Initiated Measure No. 6 as approved by the people on November 4, 1980, provide:

"*SECTION 2. IMPOSITION OF OIL EXTRACTION TAX.* There is hereby imposed an excise tax, to be known as the 'oil extraction tax', upon the activity in this state of extracting oil from the earth, and every owner, including any royalty owner, of any part of the oil extracted shall be deemed for the purposes of this Act to be engaged in the activity of extracting that oil. The rate of tax shall be six and one-half percent of the gross value at the well of the oil extracted.

\* \* \* \* \* \*

"*SECTION 6. OIL EXTRACTION TAX DEVELOPMENT FUND ESTABLISHED.* The tax imposed by section 2 of this Act shall be paid to the state treasurer when collected by the state tax commissioner and shall be credited to a special fund in the state treasury, to be known as the oil extraction tax development fund. The moneys accumulated in such fund shall be allocated as provided in this Act and the legislative assembly shall make any appropriation of money that may be necessary to accomplish the purposes of this Act.

"*SECTION 7. ALLOCATION OF MONEYS IN OIL EXTRACTION TAX DEVELOPMENT FUND.* Moneys deposited in the oil extraction tax development fund shall be apportioned quarterly by the state treasurer as follows:

1. Forty-five percent shall be allocated to the state school aid program for use in accordance with the provisions of chapter 15-40.1 of the North Dakota Century Code. It is the intent of the electors that other appropriations made by the legislative assembly for state aid to schools in accordance with chapter 15-40.1 of the North Dakota Century Code when added to the amount allocated under this subsection shall provide at least seventy percent of the funds required to meet the educational cost per pupil in elementary and secondary education as determined under the provisions of that chapter.

2. Ten percent shall be allocated and credited to a special trust fund to be established in the state treasury and shall be deposited and invested as are other state funds to earn the maximum amount permitted by law; provided that the first fifteen million dollars allocated and credited to this special trust fund shall be appropriated by the legislative assembly for Grafton state school for the remodeling or reconstruction and equipping of existing buildings and other facilities, for the construction and equipping of new buildings and other facilities, and for providing additional staffing for that institution, as shall be provided by the legislative assembly. The principal of this special trust fund shall not be used for any other purpose, but the income therefrom shall be administered by the

(1) Whether or not Initiated Measure No. 6 appropriates public moneys and thereby interferes with the legislature's appropriation authority in violation of Article X, Section 12(1) of the North Dakota Constitution;

(2) Whether or not Initiated Measure No. 6 "hampers, restricts, or impairs" the legislature's power of appropriation in violation of Article III, Section 1 of the North Dakota Constitution; and

(3) Whether or not Initiated Measure No. 6 "embraces more than one subject" in violation of Article IV, Section 33 of the North Dakota Constitution.

state industrial commission pursuant to appropriations made by the legislative assembly for the following: the funding of programs for development of energy conservation and renewable energy sources; for studies for development of cogeneration systems that increase the capacity of a system to produce more than one kind of energy from the same fuel; for studies for development of waste products utilization; and for the making of grants and loans in connection therewith. Any income earned by the special trust fund that is not appropriated by the legislative assembly, or if appropriated but not expended or loaned by the state industrial commission by the end of a fiscal biennium, shall be transferred to the state's general fund.

3. Forty-five percent shall be allocated and credited to the state's general fund for general state purposes and as an offset for the reduction in income tax revenue and for the replacement of the county twenty-one mill property tax credit for schools as provided in section 10 of this Act.

\* \* \* \* \* \*

"SECTION 11. APPROPRIATIONS. It is the mandate of the electors that this Act will be appropriately funded by the legislative assembly."

Neither Section 2 (codified as 57–51.1–02, N.D.C.C.) or Section 6 (codified as 57–51.1–06, N.D.C.C.) of the initiated measure were substantively amended by the legislature. Section 11 of the initiated measure, although not amended or repealed by the legislature, was not codified as part of the North Dakota Century Code. Section 7 of the initiated measure (codified as Section 57–51.1–07, N.D.C.C.) was amended by the legislature to provide as follows:

"57–51.1–07. Allocation of moneys in oil extraction tax development fund. Moneys deposited in the oil extraction tax development fund shall be apportioned quarterly by the state treasurer as follows:

1. Sixty percent shall be allocated to the state school aid program for use in accordance with the provisions of chapter 15–40.1. It is the intent of the electors and the legislative assembly that the allocation made by this subsection shall not exceed seventy percent of the educational cost per pupil in public elementary and secondary education as determined under the provisions of chapter 15–40.1. Should the allocation exceed seventy percent, the balance of the allocation above seventy percent shall be deposited in the general fund. Should the allocation not exceed seventy percent, it is the intent of the electors and the legislative assembly that other appropriations made by the legislative assembly for state aid to schools in accordance with chapter 15–40.1, when added to the amount allocated under this subsection, shall provide at least seventy percent of the funds required to meet the educational cost per pupil in public elementary and secondary education as determined under the provisions of chapter 15–40.1.

2. Ten percent shall be allocated and credited to a special trust fund, to be known as the resources trust fund, to be established in the state treasury and shall be deposited and invested as are other state funds to earn the maximum amount permitted by law which income shall be deposited in the resources trust fund. Provided, the first fifteen million dollars allocated and credited to the resources trust fund shall be appropriated by the legislative assembly for Grafton state school for the remodeling or reconstruction and equipping of existing buildings and other facilities, for the construction and equipping of new buildings and other facilities, and for providing additional staffing for that institution, as shall be provided by the legislative assembly. The principal and income of the resources trust fund may be expended only pursuant to legislative appropriation and shall be available to:

a. The state water conservation commission for planning for and construction of water supply facilities; and

b. The industrial commission for the funding of programs for development of energy conservation and renewable energy sources; for studies for development of cogeneration systems that increase the capacity of a system to produce more than one kind of energy from the same fuel; for studies for development of waste products utilization; and for the making of grants and loans in connection therewith.

3. Thirty percent shall be allocated and credited to the state's general fund for general state purposes."

The Taxpayers assert that the measure appropriates oil extraction tax moneys and thereby interferes with the legislature's authority to appropriate public funds in violation of Article X, Section 12(1) of the North Dakota Constitution, which provides in relevant part:

"*All public moneys*, from whatever source derived, shall be paid over monthly by the public official, employee, agent, director, manager, board, bureau, or institution of the state receiving the same, to the state treasurer, and deposited by him to the credit of the state, and *shall be paid out and disbursed only pursuant to appropriation first made by the legislature. . .*" [Emphasis added.]

We disagree with the Taxpayers' assertion that the measure appropriates public funds. Our Court has defined the term "appropriation" as used within Article X, Section 12(1) [numbered Section 186 prior to the legislative council's renumbering of the State Constitution pursuant to Section 46–03–11.-1, N.D.C.C.] as:

"the setting apart of a definite sum for a specific purpose in such a way that public officials may use the amount appropriated, and *no more than the amount appropriated.*"

*City of Fargo, Cass County v. State*, 260 N.W.2d 333 (N.D.1977); *Menz v. Coyle*, 117 N.W.2d 290 (N.D.1962); *Campbell v. Towner County*, 71 N.D. 616, 3 N.W.2d 822 (1942).

Although Initiated Measure No. 6 provides a percentage allocation or division of oil extraction tax moneys among the state school aid program, a special trust fund, and the state's general fund it does not make any appropriation of such moneys for expenditure by public officials. The measure leaves for the legislature the appropriation of definite sums to accomplish the purposes of the measure:

". . . The moneys accumulated in such fund [the oil extraction tax development fund] shall be allocated as provided in this Act and the legislative assembly shall make any appropriation of money that may be necessary to accomplish the purposes of this Act.

\* \* \* \* \* \*

"It is the mandate of the electors that this Act will be appropriately funded by the legislative assembly." Initiated Measure No. 6, §§ 6 & 11.

Although the initiated measure uses the term "mandate" to urge the legislature to provide appropriate funding, the actual process of appropriating funds to accomplish the measure's objectives is left to the legislature.

The distinction between the allocation and the appropriation of funds is illustrated by *State v. Jones*, 74 N.D. 465, 23 N.W.2d 54 (1946), which involved an initiated measure authorizing the State Highway Department to finance a highway construction program by the issuance of revenue anticipation certificates. The initiated measure provided that moneys received from the certificates were to be credited to a "state highway construction fund" and that "the same are hereby appropriated and shall be used and expended only for the construction and reconstruction of such highways and bridges . . . ." The constitutionality of the measure was challenged, among other things, on the ground that it appropriated funds in violation of Section 186 of the North Dakota Constitution (currently Article X, Section 12(1), N.D.Const.) that, "all public moneys . . . shall be paid out and disbursed only pursuant to appropriation first made by the legislature . . .".

Section 186, North Dakota Constitution, provided a standing appropriation for various departments and activities of the state including the State Highway Department:

"provided, however, that there is hereby appropriated . . . the funds allocated under the law to the state highway department and the various counties for the construction, reconstruction, and maintenance of public roads." Section 186, N.D. Const.

In view of the foregoing provision of Section 186, this Court made the following determination:

"This section of the constitution did not specify the amount of the fund, nor its

source; but it did determine that whatever money was allocated to the Highway Department could be expended without legislative appropriation. The Legislature, and the people in the exercise of the power of initiative, could determine the extent of these funds.

"This court holds that the provisions of sections 15 and 16 of the initiative measure 'appropriating' the funds so raised are not in violation of section 186 of the constitution. It is true this section 186 provides that all public moneys from any source whatever must be paid to the state treasurer and cannot be paid out of the treasury except by legislative appropriation; but there is the express exception in case of money *allocated* to the state highway department and this money is '*appropriated*' by the constitutional provision. No further 'appropriation' is necessary, nor may the legislature prevent it." 23 N.W.2d at 63. [Emphasis added.]

*Jones, supra*, is readily distinguishable from the instant case because there is no standing appropriation for the expenditure of oil extraction tax moneys allocated under the initiated measure to the state school aid program, the special trust fund, and the state general fund. The significance of *Jones, supra*, to the instant case is its illustration of the distinction between an allocation and an appropriation. Although the initiated measure in *Jones, supra, allocated* funds for use by the highway department it was the standing *appropriation* of Section 186 of the State Constitution which authorized the expenditure of such funds. Although Initiated Measure No. 6 allocates or divides oil extraction tax funds among the various objectives of the measure, it leaves the appropriation of such funds for legislative action.

We conclude that Initiated Measure No. 6 does not appropriate public moneys and does not violate Article X, Section 12(1), of the North Dakota Constitution. In reaching this conclusion we make no determination as to whether or not Article X, Section 12(1), North Dakota Constitution, places the exclusive power of appropriation in the legislature thereby prohibiting the people from appropriating public moneys.

 The Taxpayers also assert that the measure "hampers, restricts, or impairs" the legislature's power of appropriation in violation of Article III, Section 1 of the North Dakota Constitution, which provides:

"*Section 1.* While the legislative power of this state shall be vested in a legislative assembly consisting of a senate and a house of representatives, the people reserve the power to propose and enact laws by the initiative, including the call for a constitutional convention; to approve or reject legislative Acts, or parts thereof, by the referendum; to propose and adopt constitutional amendments by the initiative; and to recall certain elected officials. This article is self-executing and all of its provisions are mandatory. *Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers.*" [Emphasis added.]

The Taxpayers urge us to construe the last sentence of the foregoing provision as prohibiting the people from hampering, restricting, or impairing the legislature's power. They assert that the legislature's appropriation power is hampered, restricted, and impaired by the initiated measure's allocation of oil extraction tax funds for specified purposes and by its mandate for the legislature to make necessary appropriations to accomplish the stated objectives of the measure. They further assert that the measure interferes with the legislature's power because its provisions cannot be amended or repealed by the legislature for seven years except by a two-thirds vote of each house pursuant to Article III, Section 8 of the North Dakota Constitution.

On November 7, 1978, the people repealed Section 25 of the constitution which consisted of 14 paragraphs dealing with the creation and implementation of the initiative and referendum powers reserved in the people. On this date, the people also approved the creation of a new article to the constitution (Article III, N.D.Const.) to reserve in the people the powers of initiative, referendum, and recall.

Section 25, prior to its repeal, included the following sentence:

"Laws may be enacted to facilitate its operation, but no laws shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

That provision was construed by this Court to prohibit the legislature from passing a law which would in any way hamper, restrict, or impair the initiative and referendum powers reserved by the people. *Hernett v. Meier*, 173 N.W.2d 907 (N.D.1970). The foregoing sentence was revised and included within Section 1 of the newly created Article III:

"Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers."

The Taxpayers assert that the revision of the language of this sentence deleting the phrase "the exercise of the rights herein reserved to the people" and substituting the phrase "these powers" was to prohibit the people from hampering, restricting, or impairing "the legislative power." They assert that this interpretation is justified by construing the phrase "these powers" under Article III, Section 1, North Dakota Constitution, as encompassing "the legislative power" in addition to encompassing the powers reserved in the people under that provision. We disagree.

The entire focus of Article III, as its title declares, is on the "powers reserved to the people." Section 1 of Article III reserves in the people "the power to propose and enact laws by the initiative," "the power ... to approve or reject legislative Acts, or parts thereof, by the referendum;" "the power ... to propose and adopt constitutional amendments by the initiative;" and "the power ... to recall certain elected officials." The reservation of such powers by the people precludes the legislature from possessing an autonomous or exclusive power to legislate. In that sense the legisla-

ture's power is hampered, restricted, and impaired by the people—such result is inherent in the concept of the people reserving unto themselves legislative powers.[2] To adopt the Taxpayers interpretation of Section 1 of Article III, as prohibiting the people from hampering, restricting, or impairing the legislature's power would be contrary to the concept of reserving legislative powers in the people. That interpretation would be an unreasonable and absurd construction of the provision in violation of the rule that a statute or constitutional provision must be construed to avoid ludicrous and absurd results. *Skoog v. City of Grand Forks*, 301 N.W.2d 404 (N.D.1981).

We have been unable to find, and neither party has brought to our attention, any matters surrounding the creation of Article III and the concurrent repeal of Section 25 of our constitution which would indicate that the substantive change urged by the Taxpayers was intended. We conclude that the Article III revision of the last sentence of paragraph 14 of Section 25 constituted an attempt to provide an improved and abbreviated phrasing of that sentence without substantive change. Accordingly, we construe the term "these powers" located in the last sentence of Article III, Section 1, North Dakota Constitution, as referring only to the powers reserved in the people under that section so as to prohibit any law which would hamper, restrict, or impair the powers reserved in the people. We conclude, therefore, that Initiated Measure No. 6 does not violate Article III, Section 1 of the North Dakota Constitution.

The Taxpayers also assert that Initiated Measure No. 6 "embraces more than one subject" in violation of Article IV, Section 33 of the North Dakota Constitution which provides:

"*Section 33.* No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated

2. Consistent with the people reserving these powers unto themselves is Art. I, § 2, N.D. Const., which reads:

"Section 2. All political power is inherent in the people. Government is instituted for

the protection, security and benefit of the people, and they have a right to alter or reform the same whenever the public good may require."

thereby only as to so much. thereof as shall not be so expressed."

The Taxpayers concede that Sections 2 through 5 of the measure, which pertain to the imposition and administration of the oil extraction tax, do not violate the one-subject requirement under Article IV, Section 33, North Dakota Constitution. They contend, however, that those provisions which pertain to the establishment of the oil extraction tax development fund, the allocation of oil extraction tax moneys received, and the provision of tax credits encompass multiple subjects in violation of Article IV, Section 33, North Dakota Constitution. We disagree.

■ This Court has interpreted the one-subject requirement under Article IV, Section 33 [numbered Article II, Section 61, prior to the legislative council's renumbering of the constitution pursuant to Section 46–03–11.1, N.D.C.C.] as requiring that all matters treated by one piece of legislation be reasonably germane to one general subject or purpose. *City of Mandan v. Nichols*, 62 N.D. 322, 243 N.W. 740 (1932); *Great Northern Ry. Co. v. Duncan*, 42 N.D. 346, 176 N.W. 992 (1919).

In *Nichols, supra*, this Court held that an act involving various matters related to the general subject of "revenue and taxation" met the one-subject requirement under our constitution.

In *Duncan, supra*, a legislative bill dealing with tax levies, debt limits, and salaries of county officials was attacked as violating the one-subject requirement of our constitution. In upholding the legislation, this Court stated:

"It is a rule of construction applicable to such constitutional provisions that they should be liberally construed to uphold proper legislation where all parts are reasonably germane to a central object or purpose.

\* \* \* \* \* \*

"It is only by legislation of the character of the act in question that the legislative desire could be accomplished, unless each subject thus related to the general pur-

pose were made the subject of a separate bill. But the constitutional provision in question does not require legislation by piecemeal." 176 N.W. at 996–997.

The cases of *City of Beaumont v. Gulf States Utilities Co.*, 163 S.W.2d 426 (Tex. Civ.App.1942), and *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534 (Alaska 1978) are persuasive authority that measures dealing with various matters relating to taxation do not offend a state constitution's one-subject requirement.

The Texas Court of Civil Appeals in *Beaumont, supra*, upheld a general revenue measure against a claim that it violated the one-subject requirement of the Texas Constitution, a provision similar to our Article IV, Section 33, North Dakota Constitution, providing that "no bill ... shall contain more than one subject." In upholding the revenue measure, the Texas Court stated in relevant part:

"While it [the Omnibus Tax Law] embraces many subjects, it is clearly a general revenue measure. The purpose of the law is to raise revenue for the payment of old age assistance, aid to destitute children, aid to needy blind, obligations of the State under the Teachers' Retirement Act, Vernon's Ann.Civ.St. art. 2922—1 et seq., and to pay other expenses and obligations of the State. It reaches out and lays its hand upon various sources of revenue. The machinery is set up for the enforcement of the Act in detail. It is divided into twenty-one articles. Nineteen of these articles levy a different character of tax on different designated persons, businesses, corporations, industries and transactions within the State of Texas. It is the contention of appellant that each of these various tax matters referred to in the general scope of the Act is a separate and distinct subject matter within the language of Article III, Sec. 35 of the Constitution.

\* \* \* \* \* \*

"On the authorities cited, a general revenue measure may cover the entire field of assessing revenue; it may set up the machinery for collecting it; it may

allocate the revenue thus provided for to different state purposes; and it may make all necessary provisions incidental to, related to, or having any bearing upon the general subject of revenue collection. So, we overrule appellant's point that the Omnibus Tax Law violates Section 35 of Article III of our Constitution." 163 S.W.2d at 430–432.

In upholding a taxing statute against a challenge that it violated the one-subject requirement of the Alaska Constitution, the Alaska Supreme Court in *Sohio, supra,* stated:

"State taxation is not an unduly broad category under the one subject rule. Just as taxation has been held to be the single subject of a statute imposing different kinds of taxes upon different things, it is also the subject of a statute granting various tax credits and exemptions and clarifying the circumstances under which taxes may be levied." 585 P.2d at 545. [Footnotes omitted.]

We believe that Initiated Measure No. 6, like the measures upheld in *Beaumont, supra,* and *Sohio, supra,* encompasses only one general subject in compliance with the one-subject requirement under our constitution. Each section under the measure deals with matters which are related to or are in consequence of the imposition of the oil extraction tax. Sections 2 through 5 involve the imposition and administration of the oil extraction tax; Sections 6 and 7 involve the collection and allocation of the tax; Sections 8 through 10 involve the providing of tax credits as a consequence of the imposition of the tax; and Section 11 involves a mandate for the appropriation of moneys by the legislature to accomplish the purposes of the measure. Each provision deals with a matter which is germane to the imposition of the oil extraction tax and the consequences thereof. Accordingly, we conclude that Initiated Measure No. 6 does not violate the one-subject requirement under Article IV, Section 33 of the North Dakota Constitution.

In accordance with this opinion the order of the district court denying the Taxpayer's request for a writ of prohibition is hereby affirmed.

SAND, PAULSON and PEDERSON, JJ., and KERIAN, District Judge, concur.

KERIAN, D. J., sitting in place of VANDE WALLE, J., disqualified.