Seeed, J.,
delivered the opinion of the court:
The plaintiff in error was indicted under the twelth section of the act of March 23, 1875, cli. 94, for having received of certain merchants and factors an advance of money upon his crop of tobacco, upon a promise of consignment, and having fraudulently sold and delivered said *547 crop of tobacco to another person, in violation of his said contract and agreement.
The plaintiff in error was tried and convicted, and adjudged to pay a fine of fifteen hundred dollars, from which judgment he has appealed in error to this court.
This statute creates a new felony in this state, and is highly penal in its terms. The facts of the case are, that the defendant, a planter of the county of Robertson, and having a large crop of tobacco, the production of his farm, applied to the firm of Smith & Kennedy, merchants and factors in the city of Clarksville, for an advance *of $225 upon said crop, which, on a promise of consignment, they made to him, taking his promissory note for the amount, which they were to retain out of the proceeds of the tobacco. "When the tobacco was made ready for shipment, the defendant was advised by one Boone, to whom he was indebted, that a certain mercantile firm, for whom the defendant was largely bound, had failed and gone into bankruptcy; and he was requested by Boone, who feared the bankruptcy of defendant, to secure the debts due to Boone or for which Boone was bound by a mortgage of property. It was proposed to transfer the tobacco crop for this purpose, to which the defendant interposed the objection that said crop was already bound for Smith & Kennedy’s advance, and must be consigned to them. Upon consultation, however, with a lawyer, it was finally agreed that the tobacco crop should be conveyed to Boone, and a bill of sale, absolute on its face, was accordingly prepared by the attorney and executed by the defendant.
By a contemporaneous agreement, it was expressly stipulated that the sale of the tobacco was for the purpose of securing Smith & Kennedy and Boone, and another creditor, and that the tobacco was to be consigned to Smith & Kennedy, according to the defendant’s contract with them. At that time the market price of tobacco justified the parties in believing that it would bring enough to *548 secure all the creditors intended to he indemnified by the mortgage to Boone. Tobacco, however, began to decline in the market, and Boone, -without the knowledge or consent of the defendant, and thinking it best for all parties, shipped the tobacco first to Nashville, and thence to New York, which was ultimately put upon the market, and sold at very low prices, the sale producing only about half, perhaps, of the estimated value of the tobacco at the time it passed into the hands of Boone. The result was that the proceeds were absorbed, leaving the debt to Smith & Kennedy unpaid. We recite the facts to illustrate the good intentions of the defendant, whose good faith in the transaction can, we think, in no manner be impugned. The tobacco was diverted from the destination he had given it, without his consent, and when it was finally made known to him, he expressed his regret that it had been done.
There are several assignments of error upon the argument, but in the view we have taken of the case, it becomes unnecessary to notice them. A question meets us at the threshold of the inquiry that must be held decisive of the case. It is against the. policy of the law and the traditions of the courts, upon a statute of doubtful validity, to pronounce it repugnant to the organic law, if the decision of the case can repose upon any other ground. But when a statute is clearly unconstitutional, it is no less the duty of the courts so to pronounce it. This statute creates a new felony in this state, and its violation involves a maximum punishment of five thousand dollars fine, and five years imprisonment in the penitentiary. It is the twelfth section of an act containing thirteen sections. The act' is entitled, an ‘Act to define the rights and duties and regulate the liabilities of warehousemen and factors.” The several sections of the act, except the twelfth, seems to have some specific or general relation to the subject indicated in the title. .The twelfth section’is in the words following: “Whosoever shall buy any cotton, tobacco, or other pro *549 duce, merchandise, or property, for cash, or shall procure an advance upon such property, and shall sell, hypothecate, or pledge the same to another, and use the proceeds thereof for any other purpose than the payment of the seller, vendor, or party advancing thereon, or shall ship, convey, or otherwise make way with, or shall deliver to another any such cotton, tobacco, or other produce or merchandise, without payment to said seller, or vendor, or party having advanced thereon, shall be guilty of a felony. Upon conviction thereof, shall be punished by fine in any sum not over five thousand dollars, or imprisonment in the state prison, for not exceeding five years, or by both such fine and imprisonment.” Act of 1875, ch. 94, sec. 12.
This is a general statute, and adds a new and important felony to our criminal Code. It is found in an act entitled, an “Act to define the rights and duties and to regulate the liabilities of warehousemen and factors.” But it applies to all sorts and conditions of men who buy and sell cotton, tobacco, or other produce or merchandise, or any species of property whatever, no matter from whom they buy, or from whom they obtain an advance, or to whom they sell the same. It is certainly not germane or homogeneous with an act to define the rights and duties and regulate the liabilities of warehousemen and factors. The constitution of this state provides that no bill shall become a law winch embraces more than one subject, that subject to be expressed in the title. Art. 2, sec. 17. The object of this provision is obviously judicious and wise. It was intended to prevent improvident as well as fraudulent legislation, which most often occurs by engrafting sections and clauses in a bill incongruous with its general subject, and inconsistent with its declared object as indicated by its title. In many of the state constitutions there is a like provision. In that of New’ Jersey,'the object is thus stated in the section itself: “To avoid improper influences which may result from intermixing in one and the same act such *550 tilings as Rave no proper relation to each other, every law shall embrace hut one object, and that shall he embraced in the title.” And so in many other states, there are provisions in the organic law that not only require that they should correctly indicate the purpose of the law, hut which make the title to control and exclude everything from effect and operation as law which is incorporated in the body of the act but is not within the purpose indicated by the title. Cooley Const. Lim. (6th ed.), 169.
“The general purpose of these provisions,” says Judge Cooley, “is accomplished when a law has but one general object which is fairly indicated by its title. The generality of a title is . no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection.” Cooley Const. Lim. (6th ed.), 172, 173; Ind. Central R. R. Co. v. Potts, 7 Ind., 681.
It is very clear to our minds that the twelfth section of the act in question is repugnant to the provision, of the constitution cited, and is, therefore, unconstitutional and void.
It results that the judgment in this case must be reversed and arrested, and the defendant discharged.