Acklen v. Thompson.

JOSEPH H. ACKLEN *v.* JOHN THOMPSON.

(*Nashville.*    December Term, 1908.)

1.  **CONSTITUTIONAL LAW.** Title of act for protection of game, birds, and fish expresses but a single subject of legislation.

The title of an act, expressing as a subject of legislation the creation and establishment of a department of fish, game, and forestry, and the means and agencies for its maintenance in relation to the preservation, propagation, and protection of game animals, wild birds, and fish of the State of Tennessee, expresses but a single subject or purpose; and, for the better accomplishment of that purpose, means and agencies were to be provided for in the organization of the department therein named. All legislation germane to this single purpose or subject may be maintained, under our constitutional provision (art. 2, sec. 17) that "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title." (*Post, pp.* 49, 50.)

Acts cited and construed: Acts 1909, ch. 519.

Constitution cited and construed: Art. 2, sec. 17.

2.  **GAME.** Title of game animals, wild birds, and fish is in the State for the public.

It is well settled that, without the aid of a statute, and as a part of the common law, the title of game animals, wild birds, and fish is in the State as trustee for the benefit of its citizens, and a statutory declaration to that effect is unnecessary. (*Post, p.* 51.)

Acts cited and construed: Acts 1909, ch. 519, sec. 1.

3.  **CONSTITUTIONAL LAW.** Legislation qualifying owner's title to game, without any express indication of such purpose in the title of the act, is unconstitutional.

Where a statute, without anything in its caption or title indicating it, provides that, in every case of catching, taking, killing, or having in possession any game animal, wild bird, or fish, such possession shall imply the consent upon the part of the possessor that such title still continues in the State for the purpose of regulating and controlling the use and disposition of the same, is to that extent unconstitutional, because where such creatures lawfully pass into the possession of a citizen, the title thereto would thereupon vest in him; and conceding that his ownership and title may be qualified as attempted to be done in said act, still it cannot be done in an act whose caption or title does not specifically indicate such contemplated legislation. (*Post, pp.* 50-52.)

See headnote 9.

Acts cited and construed: Acts 1909, ch. 519, sec. 1.

Constitution cited and construed: Art. 2, sec. 17.

4.  **SAME.** Same. Caption providing for "preservation, propagation, and protection" does not authorize reservation of title in the State, as against an owner, for regulating their use and disposition.

A provision in the title of an act for the "preservation, propagation, and protection" of game animals, wild birds, and fish does authorize a provision in the body of an act for the reservation of the title thereto in the State for the purpose of regulating the use and disposition of the same, when lawfully acquired by the possessor by catching, taking, or killing. (*Post, p.* 52.)

Acts cited and construed: Acts 1909, ch. 519, sec. 1.

Constitution cited and construed: Art. 2, sec. 17.

Acklen v. Thompson.

5.  **SAME.** An act for protection of game, birds, and fish, and
    also for protection of forests, is unconstitutional as containing
    two distinct subjects.

    A single act containing provisions for the protection of game
    animals, wild birds, and fish, and also for the preservation of
    the forests of the State, contains two distinct subjects of legis-
    lation, namely, the protection of game, birds, and fish, as one
    subject, and the preservation of the forests as another and dif-
    ferent subject, and is, therefore, unconstitutional and void.
    (*Post, pp.* 52, 53.)

    Acts cited and construed: Acts 1909, ch. 519, secs. 18 and 25.

    Constitution cited and construed: Art. 2, sec. 17.

6.  **SAME.** Same. An act for propagation of game, birds, and
    fish will not authorize legislation for preservation of forests,
    for the reason that game and birds propagate in the forests.

    The fact that game animals and wild birds live and propagate
    in the forests will not authorize legislation for the preserva-
    tion of forests in an act for the preservation, propagation, and
    protection of game animals, wild birds, and fish.    (*Post, p.*
    53.)

    Acts cited and construed: Acts 1909, ch. 519.

    Constitution cited and construed: Art. 2, sec. 17.

7.  **SAME.** Title restricted to protection of birds in Tennessee
    will not authorize legislation for protection of birds without
    the State.

    Where the title of an act restricts legislation to the preservation,
    propagation, and protection of game animals, wild birds, and
    fish of the State of Tennessee, a provision in the body of the
    act that "No part of the plumage, skin, or body of any bird
    protected by this act shall be sold or had in possession for
    sale, irrespective of whether said bird was captured or killed
    within or without the State," is not authorized by such title,
    because the having in possession for sale a bird captured or
    killed without the State can in no way tend to the accomplish-

Acklen v. Thompson.

ment of the purpose declared in the title for the protection of birds in Tennessee. (*Post, pp.* 53, 54.)

Acts cited and construed: Acts 1909, ch. 519, sec. 2.

Constitution cited and construed: Art. 2, sec. 17.

8. **SAME. Same. Title restricted to protection of game in Tennessee will not authorize legislation for protection of game elsewhere.**

Such title restricting legislation to the protection of game animals in Tennessee does not authorize legislation prohibiting the sale of any game taken or killed elsewhere than in Tennessee. (*Post, p.* 54.)

Acts cited and construed: Acts 1909, ch. 519, sec. 11.

Constitution cited and construed: Art. 2, sec. 17.

9. **SAME. Legislation prohibiting the sale here of game taken outside the State is unconstitutional, as in violation of the commerce clause of the federal constitution.**

Legislation prohibiting the sale, in this State, of any game taken, captured, or killed outside of the State, operates as an unconstitutional interference with the owner's property, and in contravention of the commerce clause of the federal constitution (art. 1, sec. 8, cl. 3), where the title to such property was acquired in a sister State or foreign country, and the game was brought within this State for use or commerce. (*Post, p.* 54.)

Acts cited and construed: Acts 1909, ch. 519, secs. 2 and 11.

Constitution of the United States construed: Art. 1, sec. 8, cl. 3.

Case cited and approved: People v. Buffalo Fish Co., 164 N. Y., 93.

10. **SAME. An act embracing more than one subject, or a subject not expressed in the title, is unconstitutional.**

In all our cases from Cannon v. Mathes, 8 Heisk., 504, down to Malone v. Williams, 118 Tenn., 437, where a statute, in one or more of its provisions, was found to be in contravention of the

Acklen v. Thompson.

mandate of the constitution (art. 2, sec. 17) that "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title," it has been held to be inoperative and of no effect. (*Post, p.* 55.)

Constitution cited and construed: Art. 2, sec. 17.

Cases cited and approved: Cannon v. Mathes, 8 Heisk., 504; Malone v. Williams, 118 Tenn., 437.

Cases cited and distinguished: State v. Trewhitt, 113 Tenn., 579.

11. **SAME. Act legislating one out of office, and devolving the duties and emoluments upon another, is unconstitutional.**

An act which legislates an officeholder out of office, and devolves the duties and emoluments thereof upon another, is, to that extent, unconstitutional and void. (*Post, p.* 55.)

Acts cited and construed: Acts 1909, ch. 519.

Case cited and approved: Malone v. Williams, 118 Tenn., 437.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

JOHN J. VERTREES and THOS. H. MALONE, JR., for complainant.

JOHN R. AUST and JORDAN STOKES, JR., for defendant.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This case involves the question of the constitutionality of chapter 519 of the session Acts of 1909. The purpose of this act is thus expressed in its caption:

"A bill to be entitled an Act creating, establishing, and providing the means and agencies for establishing and maintaining a department of the State of Tennessee to be known and styled a 'Department of Game, Fish, and Forestry;' providing for his compensation, giving him authority and power to appoint assistants in the several counties in the State, and providing for their compensation; providing for *ex officio* game wardens in the various civil districts of the various counties of the State, and relating to the preservation, propagation, and protection of game, animals, wild birds, and fish of the State of Tennessee; and providing penalties for violations of any of the provisions of this Act."

The first general legislative movement for the preservation of game in this State is found embodied in chapter 169 of the Acts of 1903. By this act, the legislature asserted the principle that the wild game of the State belonged to the people in their collective sovereign capacity, and enacted measures for its protection by fixing the seasons for its taking, and attaching penalties for a violation of its several provisions.

By chapter 455 of the Acts of 1905, a department was created to be known and styled "Department of Game, Fish, and Forestry," and among other provis-

Acklen v. Thompson.

ions was one directing the appointment by the governor of a State warden, who was to serve as such for the term of eight years.    Under the authority of this act, the complainant Acklen was duly appointed to this office.

By chapter 489 of the Acts of 1907, the right of ownership to the fish was asserted to be in the State, and the taking of fish from its public waters was regulated; and the duty of the enforcement of this statute was devolved on the State warden and his subordinate agencies.    At the same session of the legislature, an act was passed, the same being chapter 397, by which a system of forestry laws was provided and the duty of executing the same was also imposed upon the department of game, fish, and forestry.    This was followed by chapter 519 of the Acts of 1909, the title to which has been hereinbefore set out.

It must be confessed, in the outset, that the caption to this act is somewhat involved, and that it requires an analysis of its various provisions to ascertain its exact extent.    Without setting out the process of such analysis, we think, it may be simplified so as to arrive at the meaning of the legislature in adopting it by the rejection of all unnecessary verbiage.    Thus treating it, we think it may be read as follows:

"A bill to be entitled An act to create and establish for the State of Tennessee a department of fish, game, and forestry, and to provide means and agencies for its maintenance and relating to the preservation, propagation, and protection of game animals, wild birds and

fish for the State of Tennessee, and providing penalties for violations of any of the provisions of the act."

Thus read, the title gives notice that its purpose was to cover legislation for the benefit of the game animals, fish, and wild birds of the State, yet the act which follows is directed alone, save in particulars—to be pointed out later—to the protection, preservation, etc., of game animals and birds, leaving the fish of the State to be protected under chapter 489 of the Acts of 1907.

Conceding the above to be a proper reading of the title to this act, the question arises, Does the act violate section 17 of article 2 of the State constitution, which provides that "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title"?

So far as the title itself is concerned, we are satisfied it expresses but a single subject or purpose, and that for the better accomplishment of that purpose means and agencies were to be provided for in the organization of the department therein named. All legislation germane to this single purpose or subject, under this section of the constitution, can be maintained.

Is the contention of the counsel of the complainant that the act itself contains incongruous provisions, sound or not?

Section 1 of the act, after declaring that the title to all game animals, wild birds, and fish in the State of Tennessee, not held by private ownership, was in the State, and that "no right, title, interest, or property

therein can be acquired or transferred, or possession thereof had or maintained," except as therein provided, then enacts that "no game animals, wild birds, or fish shall be caught, taken, or killed in any manner or at any time, or had in possession except the person so catching, taking, or killing, or having in possession, shall consent that the title to said game animals, wild birds, and fish shall be and remain in the State of Tennessee for the purpose of regulating and controlling the use and disposition of the same after such catching, taking, or killing; and the catching, taking or having in possession of game animals, wild birds, or fish at any time or in any manner by any person shall be deemed a consent of said person that the title of the same shall be and remain in the State for the purpose of regulating the possession, use, and disposition of the game, and such possession shall be consent to such title in the State."

We understand it to be well settled in at least American jurisprudence that, without the aid of a statute, and as a part of the common law of this country, the title of game animals, birds, and fish is in the State as trustee for the benefit of its citizens. So it is that the first part of this section declaring such ownership to be in this State was unnecessary, yet the declaration there made cannot be held to affect the question in hand. But, as has been seen in the concluding paragraph, an advanced step is taken, in that it provides that in every case of catching, taking, killing, or having in possession any game animal, wild bird, or

fish that such possession shall imply the consent upon
the part of the possessor that such title still continues
in the State for the purpose of regulating and con-
trolling the use of the same.   It would seem that where
any of the creatures, for the protection of whom this
statute was passed, had passed lawfully into the posses-
sion of a citizen, that the title to the same would there-
upon be vested in him.   And it would further seem,
that if the property of the citizen thus lawfully ac-
quired is to be qualified as is done in the concluding
paragraph of this section, then this should have been
specifically pointed out in the caption of the act.   Not
only is there a failure in this regard, but we are at a
loss to understand how it is that the reservation of the
title in the State for the purpose of regulating the use
and disposition of game animals, fish, or wild birds
lawfully acquired by the possessor can be said in any
sense to promote their "preservation, propagation, and
protection."

There is, however, a still more serious objection to
this statute arising upon sections 18 and 25 thereof.
By section 18, it is provided that the commissioner of
game, fish, and forestry, together with his subordinates,
shall enforce all laws in existence or to be thereafter en-
acted not only for the protection, preservation, and
propagation of game, etc., but for "the preservation of
the forests of this State, and to prosecute all persons
who violate such law or laws," while by section 25 it
is provided "that where the department of game, fish,

and forestry has been furnished information of the violation of any game, fish, or forestry law," he "shall in person or by deputy proceed to the place where said offense is alleged to have been committed, and within said county summon and examine under oath witnesses to ascertain the fact if said law has been violated and cause said offenders to be punished."

We think it certain that in the face of the provision of the constitution set out above, a single act could not be passed containing provisions for the protection of game animals, fish, and birds, and the preservation of the forests of the State. The legislature, in the several statutes passed at different times, recognized the necessity of classifying these as several subjects and provided for them in distinct enactments.

This distinction, thus practically recognized by the legislature, we regard as eminently sound and its effect on legislation, so far as the constitutional provision with which we are now dealing is concerned, cannot be avoided by the very ingenious suggestion of counsel for defendant that as game animals and birds live and propagate in the forests, that legislation for their preservation might be legitimately passed under the title in question.

Further, it will be seen that the title restricts legislation to game animals, wild birds, and fish of the State of Tennessee, while section 2, among other things, provides that "no part of the plumage, skin, or body of any bird protected by this act shall be sold or had in pos-

session for sale, irrespective of whether said bird was captured or killed within or without the State, except as expressly provided in this act." We are unable to see how it is that the having in possession for sale a bird captured or killed without the State can in any way tend to the accomplishment avowed in the title to this act.

Again, section 11 prohibits, except as authorized by section 16, the sale of any game "whether taken or killed in this State or not." There is nothing in the title which gives information that game killed elsewhere than in Tennessee was to be made the subject of legislation. Game killed beyond the confines of the State, and brought into the State, can have nothing whatever to do with the game which is in a state of nature within the State.

Not only is this legislation, so far as it affects the title of the possessor to game killed out of the State, a subject beyond the title of this act, but we think it is additionally objectionable, because, if applied, where game is brought from a foreign State into this State for the possessor's use it would unconstitutionally interfere with the possessor's natural and lawful control of his property, and it would be in contravention of the interstate commerce clause of the federal constitution in a case where the possessor had, in the course of his trade, acquired title in a foreign State, and brought the game within this State for use or commercial purposes. *The People* v. *The Buffalo Fish Co.,* 164 N. Y., 93.

In view of these incongruous provisions, we are satisfied it cannot stand. In all our cases from *Cannon* v. *Mathes*, 8 Heisk., 504, down to *Malone* v. *Williams*, 118 Tenn., 437, where it has been found that a statute in any one or more of its provisions was in contravention of the clause of the constitution hereinbefore set out, it has been held to be inoperative and of no effect. We see no reason why a departure from the rules announced in these various cases should be excused, when their authority is invoked for the purpose of declaring the present act unconstitutional.

It may be said, in passing, that the case of the *State* v. *Trewhitt*, 113 Tenn., 579, did not involve the clause of the constitution with which we are now dealing, but one altogether distinct and independent of it. And this is clearly indicated by Mr. Justice Neil in *Malone* v. *Williams*, supra, who also delivered the opinion in the *Trewhitt Case*.

There is another objectionable feature to this act, in that it practically legislates out of office in the middle of his term the complainant, and devolved its duties and emoluments upon another. We think there is no avoiding the insistence of complainant that this legislation is in the face of the holding of this court in *Malone* v. *Williams*.

For these reasons, the decree of the chancellor, adjudging this act to be void for unconstitutionality, is affirmed.