## H. N. FORREST *v.* THE STATE.*

### (*Jackson.*   April Term, 1926.)

Opinion filed, July 13, 1926.

1. CONSTITUTIONAL LAW.   Acts 1925, ch. 2, sections, 4, 5, 6, 7.

The Tobacco Sales Tax Act of 1925, ch. 2, is not unconstitutional by
provisions contained in sections, 4, 5, 6, and 7, relating to its en-
forcement, and prescribing penalties for violations.   (Post, p. 15.)

Citing: Acklen v. Thompson, 122 Tenn.; 46, 126 S. W., 730, 135 Am.
St. Rep., 851; Ledgerwood v. Pitts, 122 Tenn. 608, 125 S. W., 1036;
Gassett v. State, 2 Shan. Cas., 546; Malone v. Williams, 118 Tenn.,
406, 103 S. W., 798, 121 Am. St. Rep., 1092.

2. SAME.   Tobacco sales tax law.   Applications of revenue.

The general subject of the statute (Acts 1925, ch. 2), expressed in
the caption is the raising of revenue by a tax on tobacco.   Pro-
visions for the application of revenue so raised, or expressions of
the legislative purpose, and disposition thereof, are germane and
directly connected with the general subject of the statute.   (Post,
p. 19.)

Citing: Cannon v. Matthews, 8 Heisk. (55 Tenn.) 523; State v.
Cumberland Club, 136 Tenn., 97, 188 S. W., 586.

3. CONSTITUTIONAL LAW.   Title and subject of statutes.

Tax statutes providing means for their enforcement and penalties
and punishment for their violation, if germane to the principal
purpose, expressed in caption, are valid though no reference in
the caption to such provisions are made.   (Post, p. 21.)

Citing: State v. Lasater, 9 Bax. (68 Tenn.) 586; Gowan v. State, 13
Lea, (81 Tenn.) 162; Truss v. State, 13 Lea, (81 Tenn.), 312, and
cases there cited; State v. McMinnville, 106 Tenn., 384, 61 S. W.,
785; Canon v. Matthews, 8 Heisk. (55 Tenn.) 504; House v.
Creveling, 147 Tenn., 589 and authorities there cited.

**4. TAXATION. Privileges. Release. Blindness.**

The Acts of 1901, ch. 87, for the relief of blind persons from the payment of privileges and license, does not release such persons from a duty to comply with other kindred provisions of law; as to affix stamp to tobacco offered for sale. (Post, p. 22.)

**5. STATUTES. Construction. Exceptions not provided for.**

·To ascertain the intention of the legislature is the cardinal rule in the construction of statutes, and where exceptions are not made in the provision of a general statute, the courts cannot create such. (Post, p. 24.)

---

*Headnotes 1. Statutes, 36 Cyc., pp. 1023, 1026, 1032, 1044; 2. Statutes, 36 Cyc., p. 1029; 3. Statutes, 36 Cyc., pp. 1026, 1044; 4. Licenses, 37 C. J., Section 91; 5. Statutes, 36 Cyc., p. 1106.

---

FROM GIBSON.

---

Error to the Circuit Court of Gibson County.—HON. THOMAS E. HARWOOD, Judge.

W. W. HERRON, for plaintiff in error.

WM. H. SWIGGART, Assistant Attorney-General, for the State.

MR. KINNEY, Special Justice, delivered the opinion of the Court.

The plaintiff in error, hereinafter referred to as defendant, was convicted below of violating what is known as the Tobacco Sales Tax Law, being chapter 2, of the Public Acts passed by the legislature of 1925.

The defendant is a blind merchant, engaged in business at Trenton, Gibson county.

His able attorney assigns six errors to the action of the trial judge, but says in his brief that it will readily appear, when the case is considered by this court, that there are but three questions in the lawsuit, and that these three questions are as follows:

"First. Is the act of the General Assembly of the State of Tennessee for the year 1925, the same being chapter 2 of the Public Acts, valid and binding, and therefore constitutional, or is the same unconstitutional?

"Second. If the act above referred to is constitutional, then is the act of 1901, the same being chapter 87 of the Public Acts of the General Assembly for the State of Tennessee for the year 1901, constitutional or unconstitutional? And, if constitutional, does it not exempt the blind merchants in Tennessee from the payment of the taxes referred to in chapter 2 of said Acts of 1925?

"Third. Was it not error on the part of the court below to refuse to permit proof to go to the jury that the defendant had been exempted from the payment of special privilege taxes, as contemplated in both of the acts above referred to?"

We also are of the opinion that these are the controlling questions in the case.

The defendant then insists that said act is unconstitutional for two reasons:

"First. Because the body of the act is broader than its caption.

"Second. Because the bill embraces more than one subject, one of which subjects is not expressed in the title."

The most serious attack made as to the constitutionality of the act is directed at section 7, but there are also objections to sections 4, 5, and 6.

It is said that section 4 creates a separate criminal offense from any now on the statutes, and provides penalties for the violation thereof, and that section 5 also creates a separate criminal offense, and that section 6 enlarges the jurisdiction of the grand juries, and enlarges the duties of the circuit and criminal judges, sheriffs and peace officers.

Most all tax statutes provide means for their enforcement, and penalties and punishments for their violation, and would be of little consequence without such provisions. These are germane to the principal purpose of the statute as expressed in the caption, and no reference in the caption to such provisions need be made; but in fact it was made in the caption of this act as follows:

"And to provide methods and penalties for its enforcement."

We are of the opinion, therefore, that the attacks made on sections 4, 5, and 6 are not good.

As to section 7, the defendant contends as follows:

"Of yet more serious objection, however, is section 7 of said act, which provides that the administration of the provisions of said act shall be conducted by the excise tax division of the department of finance and taxation, and then goes further and says: 'Provided, that, in addition to one-third of the revenue derived from this tax that under the present law will accrue to the general school fund that the further sum of $250,000 from the revenue from this tax shall be used as a special fund to create an eight-months school term in the rural schools

of the State to be expended under any State law which may be enacted for securing such school term in the rural schools in the absence of such future legislation under the direction of the commissioner of education and the governor.'

"That section of said act above quoted creates a special sinking fund, or a special fund out of the revenues provided for said act, and the caption of the act in no place mentions that such fund is to be created therein, or refers to the same, and it is our insistence that the creation of this special fund, or sinking fund, in the body of the act, makes the act broader than its caption, and that the caption only refers to one subject, namely, imposing a special privilege tax upon sales, etc., while the body of said act embraces two subjects in that it creates this special sales tax, and in addition to creating the separate criminal offense herein mentioned, and enlargement of the duties of the circuit judges, grand juries, sheriffs, and peace officers, it goes still further, and creates a special fund out of the moneys coming to the treasury of the State."

The proviso of the act, above quoted, contemplated that the legislature would enact other and additional legislation to effect the purpose therein expressed; that is, that $250,000 of the revenue realized from the tobacco tax should go in aid of rural school education, but provided that, "in the absence of such future legislation," said $250,000 should be used "under the direction of the commissioner of education and the Governor."

This was simply a direction in the act as to what disposition should be made of this tax, or, at least, of so much as $250,000 of same, when collected. The defend-

154 Tenn.—2.

ant insists that this was another subject, and made the act obnoxious to that provision of the Constitution which inhibits embracing more than one subject in a bill.

It was never intended that the title should express fully everything contained in an act.

In the case of *State* v. *Lasater,* 9 Baxt., 586, this court, in passing upon this provision of the constitution, said:

"Legislation upon different subjects, and upon subjects not indicated in the title of the act, are forbidden; but it was not intended that every provision or feature of the law should constitute a different subject, so as to make it necessary to pass separate acts in regard to each, nor was it intended that the title should express fully everything contained in the act.

"Here the subject is the rights, duties, and liabilities of innkeepers, common carriers, and proprietors of places of public amusement, etc. Now a provision that no turbulent or riotous conduct shall be allowed in such places, and providing for the punishment of the offenders, we think, is not legislation on a different subject. Looking to the evil to be remedied, and bearing in mind that there must be a clear violation of the Constitution before we can declare an act void, we hold that this act is not void on this ground."

In *Garvin* v. *State,* 13 Lea, 162, it is said: "The object and purpose of the constitution, in providing that an act shall embrace but one subject, which shall be expressed in the title, is to give notice to the legislator of the subject of legislation, and it is sufficient so long as the subject-matter of the act is germane to that expressed in the title, whether the body enlarges or restricts the title. If a statute admits two constructions, one of

which would render it constitutional, and the other unconstitutional, the former should be adopted; and a doubt in relation to its constitutionality should be resolved in favor of the act.''

In *Truss* v. *State*, 13 Lea, 312, the court said: ''Whatever is of sufficient import to direct the mind to the subject of proposed legislation meets the object of the constitution. *Cannon* v. *Mathes*, 8 Heisk., 519; *State* v. *Lasater*, 9 Baxt., 584; *Gowan* v. *State*, MS.

''The use in the caption, to 'prevent sales of cotton,' necessarily calls the attention to sales of every character and the steps ordinarily taken to effect them. The term 'receive on deposit' is used in the act in connection with sale, barter, and exchange, and as a step to their accomplishment.''

In *State* v. *McMinnville*, 106 Tenn. (22 Pickle), 384, 61 S. W., 785, the court held as follows:

''1. *Constitutional Law—Title and Subject of Statutes.*—A statute with one general subject may embrace subdivisions, provisos, and exceptions pertinent to that subject to any extent that they can be grouped without incongruity.''

The late decisions of this court on this provision of the constitution quote approvingly from the leading case of *Cannon* v. *Mathes*, 8 Heisk., 504. In *House* v. *Creveling*, 147 Tenn., 589, 598, 250 S. W., 357, this court said:

''It has been held in Tennessee since *Cannon* v. *Mathes*, 55 Tenn. (8 Heisk.), 504, that the generality of a title is not objectionable, if not made a cover for legislation incongruous in itself, and that the legislature must determine for itself how broad and comprehensive the object of the statute shall be. Our cases are very numerous.

The last review of them is contained in *State* v. *Cumberland Club,* 136 Tenn., 84, 188 S. W., 583. We would hesitate to say what is the limit, if any, to the scope of an act of the legislature suitably entitled. We have many acts covering very wide fields." *House* v. *Creveling,* 147 Tenn., 598, 250 S. W., 359.

The title of the act, the constitutionality as to which was construed by the court in *Cannon* v. *Mathes,* was as follows: "An act to fix the State tax on property." Laws 1870, chapter 74. The body of this act, however, contained provisions increasing the property tax, and also increasing the privilege taxes of the State. The body of said act also repealed a former act, and further amended a former act "as to the manner and order in which the comptroller and treasurer were directed to pay out the money in the treasury." It was contended in that case that this was a violation of that provision of the constitution involved in this case. In that case, the court, in construing that act, said:

"The general subject of the act is revenue, and each and every section has direct reference to the subject of revenue in its different phases. It cannot be said that there is the least incongruity among the provisions of the four sections. They have a natural, if not a necessary, connection with and dependence upon each other. Revenue is the general subject of the act; its amount and its disbursement from the treasury are the special objects provided for. It is clear that the act is not obnoxious to the objection that it embraces more subjects than one. [*State* v. *Bowers*], 14 Ind., 195; [*Harriman* v. *State*], 2 Iowa, 280; [*Brewster et al.* v. *City of Syra-*

*cuse*], 19 N. Y., 119; Cooley's Const. Lim. 145." *Cannon* v. *Mathes*, 8 Heisk., 519, 520.

Considering the statute involved in this case in the light of the above holding, it is apparent that the general subject of the statute, expressed in the caption, is the raising of revenue by a tax on tobacco. Provisions for the application of the revenue so raised, or expressions of the legislative purpose in raising such revenue and the disposition thereof, are clearly germane to and directly connected with the general subject of the statute.

*Cannon* v. *Mathes* also contains a statement which has been quoted and applied by this court in numerous cases, as follows:

"It is obvious, therefore, that the true rule of construction, as fully established by the authorities, is that any provision of the act, directly or indirectly relating to the subject expressed in the title, and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it." *Cannon* v. *Mathes*, 8 Heisk., 523.

In *State* v. *Cumberland Club*, 136 Tenn., 97, 188 S. W., 586, after quoting the language just set out above, this court said: "It may be said generally that things naturally and usually connected in thought are germane to each other, as, for example, where they appear as incidents to the main subject, or the means of its execution. The same is true of exceptions and provisos."

We are of the opinion that the raising of revenue by taxes on tobacco and the disposition of that revenue when so raised are things naturally and usually connected in thought and germane to the main thought in the caption. The imposition of a tax on tobacco was certainly made for some purpose, to support some department of

the State government, and this thought would naturally and usually occur in connection with an act to raise revenue.

We have therefore reached the conclusion that this act is not unconstitutional on the grounds set out by the defendant.

We have examined the cases cited in his brief on these points, namely: *Acklen* v. *Thompson,* 122 Tenn., 49, 50, 126 S. W., 730, 135 Am. St. Rep., 851; *Ledgerwood* v. *Pitts,* 122 Tenn., 608, 609, 125 S. W., 1036; *Gossett* v. *State,* 2 Shan. Cas., 546; *Malone* v. *Williams,* 118 Tenn., 466, 103 S. W., 798, 121 Am. St. Rep., 1002—but we find nothing in any of these cases in conflict with this holding.

It is next contended that the defendant is exempt under the act of 1901, chapter 87 of the Public Acts of the General Assembly of this State, and the release from payment of privilege and license taxes by the county court of Gibson county.

We are of the opinion that this contention is not good, because no action of the county court under said statute of 1901 could release the defendant of the obligation to stamp his tobacco which he offered for sale and sold.

Chapter 87 of the Acts of 1901 is a statute for the relief of blind persons from the payment of certain privileges and license taxes, and provides as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that all persons living within the State of Tennessee who are totally blind and who are exempted from paying county privilege and license taxes by the county courts of the counties in which such persons reside and do business, be and the same are hereby relieved from all license and privilege taxes due the

State of Tennessee for such business as said persons shall be engaged in, except liquor dealers' tax, for and during the time for which said persons shall have been relieved of such taxes by the county courts of said counties.''

The resolution of the county court which the defendant offered in evidence is as follows:

"*Special Releasements.*—District 7.   Mr. Forrester. From paying license in business.''

The language of the above release by the said county court is ''from paying license.''

The act of 1925 as to the stamp tax on tobacco does not require any license at all.   The dealer is not required to procure a license at all, but is required under this act simply to buy stamps from the commissioner of finance and taxation of the State of Tennessee, and affix to each package of cigars, cigarettes, manufactured tobacco, and snuff a stamp of the required value, and which shall evidence the payment of the tax imposed by this act.

No license at all being required by the act of 1925, the above release by said county court ''from paying license'' could in no wise release the defendant from procuring and affixing the stamps required by the act to the manufactured tobacco sold or offered for sale.

The tobacco stamp tax imposed by chapter 2, Acts of 1925, is a species or kind of privilege tax, entirely distinct from any which was contemplated by chapter 87, Acts of 1901.   It is not a tax paid on the privilege of doing a general business, for which a license must be obtained, but it is a tax on each separate sale of manufactured tobacco.   The county is not authorized to levy a tax similar to the State stamp tax on sales of tobacco,

and hence the said statute of 1901 could not apply to it, as under that statute it was expressly made a condition precedent to the release of the State tax as to blind merchants that the county should first grant such release from the payment of similar county taxes, and, as the county is not authorized to make such levy, it cannot, of course, make such release.

To ascertain the intention of the legislature is said to be the cardinal rule in the construction of statutes. Did the legislature, then, by the act of 1901 intend to release blind merchants from the payment of such a tax as this on manufactured tobacco?

The act of 1925 defines the word "person," as used therein, to mean and include every individual, with no exceptions whatever. It defines the term "dealer," as used therein, to mean and include every person, other than a distributor, who engages in the business in this State of distributing, etc., with no other exception. This broad, all-inclusive definition in the statute necessarily included all persons selling tobacco whether blind or otherwise.

It follows, from the conclusions we have reached as to the first and second contentions of the defendant, that his third contention, that the trial judge was in error in refusing to permit evidence to go to the jury to the effect that the defendant had been exempted from the payment of this tobacco stamp tax, is also untenable.

The uncontradicted evidence in this case shows the sale by the defendant of unstamped cigarettes, and the possession in stock for the purpose of sale of a quantity of manufactured tobacco, which was not stamped as re-

quired by the Tobacco Stamp Tax Law of 1925, and we are therefore constrained to affirm the judgment of the court below.