## CITY OF BEAUMONT v. GULF STATES UTILITIES CO.

### No. 3996.

Court of Civil Appeals of Texas. Beaumont.
June 3, 1942.

Rehearing Denied June 17, 1942.

Geo. E. Murphy, City Atty., of Beaumont, Robert L. Sonfield, of Houston, and W. A. Tatum, Asst. City Atty., of Beaumont, for appellant.

Orgain, Carroll & Bell, of Beaumont, for appellee.

WALKER, Chief Justice.

Appellant, City of Beaumont, is a municipal corporation holding its charter under Sec. 5, Art. XI—the Home Rule Amendment—of our State Constitution, Vernon's

Ann.St., which, in its pertinent provisions, reads: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *". (Adopted election November 5, 1912; proclamation December 30, 1912.)

On June 4, 1940, appellant adopted an ordinance entitled "An ordinance fixing rentals to be paid by telegraph, telephone, electric and gas companies for the privilege of using with their poles, wires, conduits, pipes, and fixtures, the streets, easements, and alleys and other public ways within the city of Beaumont, Texas, providing penalties for violations, and an emergency." By the provisions of this ordinance appellee, Gulf States Utilities Company, an electric company, for the use of appellant's streets, was charged an annual rental equal to four per cent of its gross receipts, received from its business conducted in appellant's corporate limits for the preceding year. The ordinance also provided a penalty against appellee of $100 per day for conducting its business without paying this rental. No point is before us against the validity of this ordinance, as and when adopted.

By the provisions of the third paragraph of Sec. I of Art. V of the Omnibus Tax Law passed by the 47th Legislature, General and Special Laws, Regular Session 47th Legislature, c. 184, page 269 at page 284, Vernon's Ann.Civ.St. art. 7060, the power of cities in Texas to levy and collect rental from public utilities of the class of appellee for the use of their streets was limited to two per cent of their gross receipts. We give the language of the Omnibus Tax Law on this point: "Nothing in this Article shall be construed as prohibiting an incorporated city or town from making a reasonable charge, otherwise lawful, for the use of its streets, alleys, and public ways by a public utility in the conduct of its business, and each such city shall have such right and power; but any such charges, whether designated as rentals or otherwise, and whether measured by gross receipts, units of installation, or in any manner, shall not in the aggregate exceed the equivalent of two (2) per cent of the gross receipts of such utility within such municipality derived from the sale of gas, electric energy, or water."

This suit was by appellant against appellee to collect an additional two per cent rental charged by its ordinance, with penalties, etc., in addition to the two per cent admittedly paid under the ordinance by the appellee. For cause of action appellant plead the pertinent provisions of its ordinance assessing the rental charges against appellee, and further that the pertinent provisions of the Omnibus Tax Law, quoted above, were in violation of the Federal and State Constitution. Appellee challenges the sufficiency of appellant's petition to state a cause of action by special exception and motion to strike. Judgment was entered in the lower court on the pleadings in favor of appellee against appellant, dismissing appellant's cause of action.

The only point presented by this appeal is the constitutionality of the pertinent provisions of the Omnibus Tax Law, quoted above.

■ Appellant bottoms its constitutional points on the assumption that it owns its streets and alleys in its proprietary capacity. Sec. 19 of appellant's charter provides: "(1) The ownership, right of control and use of the streets, highways, alleys, public places and all other real property of the City of Beaumont is hereby declared to be inalienable to said city, except by ordinance passed by vote of the majority of the City Commission as hereinafter provided."

This proposition is overruled.

If appellant did not own its streets and alleys prior to the adoption of its Home Rule Charter, it did not acquire title by the positive charter assumption of title. The law of this state on this point, prior to the adoption of the Home Rule Amendment, was stated as follows by our Supreme Court in Compton v. Waco Bridge Co., 62 Tex. 715: "As between the legislature and the municipal government, the former has the paramount and unrestricted authority over the streets and alleys of the city as public highways; and by virtue of this authority it may authorize the placing of obstructions in these streets or legalize existing obstructions which might otherwise be deemed nuisances. The legislature may also delegate this power to the munici-

pal authorities, and vest in them such authority and control over the streets and alleys as might be thought best for the general good."

On this authority, it was clearly the law that Texas cities did not own their streets and alleys in their proprietary capacity prior to the adoption of the Home Rule Amendment. In West v. City of Waco, 115 Tex. 472, 294 S.W. 832, 833, speaking of the streets and alleys of home rule cities—the City of Waco was a home rule city—the court said: "The highways of the state, including streets of cities, belong to the state, and the state has full control and authority over them. They 'are the property of and for the use of the state, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities.'"

Since Texas cities did not own their streets and alleys in their proprietary capacity prior to the adoption of the Home Rule Amendment, and are not vested with title by the Home Rule Amendment, it necessarily follows that appellant was without power to preempt title by the simple declaration of its charter; so, the provisions of Sec. 19 of its charter, declaring its streets and alleys to be its property, is without force and effect in support of appellant's point, attacking the constitutionality of the pertinent provisions of the Omnibus Tax Law.

The next question: Under the law of Texas which government, the state or the municipality, has dominent control of the streets and alleys of home rule cities? This question was answered in favor of the State by Judge Alexander, now Chief Justice of our Supreme Court, speaking for the Waco Court of Civil Appeals, in City of Waco v. Thralls, 128 S.W.2d 462, 464: "Our State Constitution, art. 11, sec. 5, Vernon's Ann.St., authorizing cities to adopt Home Rule Charters provides that such cities may 'adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State * * *.' See also R.S. art. 1165. It has been held many times that any ordinance or charter provision of a Home Rule city that is contrary to or inconsistent with any general law enacted by the Legislature is void."

Our Supreme Court in McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105, quoting the Home Rule Amendment, said that charters and ordinances of home rule cities must conform to the Constitution and general laws of the state. The Supreme Court of the United States, in City of Worcester v. Worcester Street Ry. Co., 196 U.S. 539, 25 S.Ct. 327, 49 L.Ed. 591, ruled this point in favor of the State Legislature.

■ In 39 Texas Jurisprudence, para. 57, page 597, is this statement: "Control of streets is a legislative power which cannot be surrendered, impaired or abridged by the city, by contract or otherwise."

In McQuillam on Municipal Corporations, 2d Ed., par. 2902, page 12, the general rule is stated as follows: "Courts everywhere decline to recognize that the city possesses any property rights in the streets, although they may be a sourse of profit to the municipality. Their interest is exclusively public juris, and is in any respect wholly unlike property of the private corporation which is held for its own benefit and used for its private gain and advantage."

In 39 Texas Jurisprudence, page 613, par. 68, it is said: " * * * a regulation will be declared void if it conflicts with the Constitution or a law of the State."

In City of Springfield v. Springfield Street Ry. Co., 182 Mass. 41, 64 N.E. 577, 581, the court said: "So far as the city is concerned, it must be deemed to have acted in behalf of the public, and not in virtue of any private or proprietary rights; and the legislature has the same right to modify or abrogate the conditions on which location in the streets and public ways have been granted that it would have if such conditions had been originally imposed by it." See also City of Lubbock v. Magnolia Petroleum Co., Tex.Com.App., 6 S.W.2d 80.

■ On the authorities cited, it is clear that a home rule city can not enact a valid ordinance in conflict with the general law of the state. This is the mandate of the Home Rule Amendment, and our courts have construed its language strictly and literally in favor of the dominant power of the Legislature.

■ But in the case at bar, appellant did not pass an ordinance conflicting with an existing general law; subsequent to the adoption of the ordinance, the Legislature passed a general law conflicting with the city ordinance. The effect of this subsequent general law on the prior existing city ordinance is thus stated by the Commission of Appeals in City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202, 205:

"In a word, as long as the state does not, in its Constitution or by general statute, cover any field of the activity of the cities of this state, any given city is at liberty to act for itself. But, when the state itself steps in and makes a general law and applies such law to all cities of a certain class, then we submit that no city of the same class is authorized, under our Constitution, to enact contrary legislation. If this principle has not already been adopted as the settled law of this state, then it should be so understood from this time forward."

This proposition from the Fall case was given controlling effect by the court in Dry v. Davidson, Tex.Civ.App., 115 S.W.2d 689.

■ It follows from what we have said that the pertinent provisions of the Omnibus Tax Law passed by the 47th Legislature, supra, are not unconstitutional as being in violation of the Home Rule Amendment of our State Constitution.

■ Appellant's second point is that the Omnibus Tax Law deprived it of its property without due process of law, in violation of the Federal Constitution. This contention was denied by the Supreme Court of the United States in City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 535, 537, 67 L.Ed. 937, 29 A.L.R. 1471; writing the opinion in that case, Judge Butler said: "The power of the state, unrestrained by the contract clause or the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned. In Hunter v. [City of] Pittsburgh, 207 U.S. [161], 179, 28 S.Ct. 40, 52 L.Ed. 151, reference is made to the distinction between property owned by municipal corporations in their public and governmental capacity and that owned by them in their private or proprietary capacity, and decisions of this court which mention that distinction are referred to. In none of these cases was any power, right, or property of a city or other political subdivision held to be protected by the Contract Clause or the Fourteenth Amendment. This court has never held that these subdivisions may invoke such restraints upon the power of the state." See also City of Worcester v. Worcester Street Railway Co., supra.

The authorities cited above clearly deny appellant's point that the Omnibus Tax Law violates Sections 16, 17 and 19 of Art. I of our State Constitution. Appellant does not own its streets and alleys in its proprietary capacity; it exercises authority over them subject to the general laws of the State of Texas; therefore no constitutional right of appellant was violated by the pertinent provisions quoted above of the Omnibus Tax Law, limiting its rental charges against appellee to two per cent of appellee's gross receipts.

Appellant's third constitutional point is that the Omnibus Tax Law violates Sec. 35 of Art. III of our State Constitution "in that it contains more than one subject." We give the pertinent constitutional provision: "Sec. 35. No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

This point is overruled. This Omnibus Tax Law covers pages 269 to 340 of the General and Special Laws of the 47th Legislature. While it embraces many subjects, it is clearly a general revenue measure. The purpose of the law is to raise revenue for the payment of old age assistance, aid to destitute children, aid to needy blind, obligations of the State under the Teachers' Retirement Act, Vernon's Ann.Civ.St. art. 2922—1 et seq., and to pay other expenses and obligations of the State. It reaches out and lays its hand upon various sources of revenue. The machinery is set up for the enforcement of the Act in detail. It is divided into twenty-one articles. Nineteen of these articles levy a different character of tax on different designated persons, businesses, corporations, industries and transactions within the State of Texas. It is the contention of appellant that each of these various tax matters referred to in the

general scope of the Act is a separate and distinct subject matter within the language of Article III, Sec. 35 of the Constitution.

■ Revenue acts are not construed strictly under the constitutional provision invoked by appellant. 39 Tex.Jur. 80. A distinction must be drawn between the "subject" of an act and its "object"; "if there be but one subject in the act, but more than one object, the act would not be obnoxious to the constitution." Fahey v. State, 27 Tex.App. 146, 11 S.W. 108, 109, 11 Am.St.Rep. 182. In Wilkinson v. Lyon, Tex.Civ.App., 207 S.W. 638, 640, the court said: "It is also well settled that an act of the Legislature is unobjectionable on the ground that it contains more than one subject, if those subjects are germane or subsidiary to the main subject; that the requirement of the constitutional provision is addressed to the subject, and not to the details of the act, to accomplish the main object of the act, and such details may be multifarious. Joliff v. State, 53 Tex.Cr. R. [61], 63, 109 S.W. 176; Singleton v. State, 53 Tex.Cr.R. 625, 111 S.W. 736, and authorities there cited."

In Breen v. Texas & Pacific R. R. Co., 44 Tex. 302, 303, the statute attacked was entitled "An act to fix the venue in certain cases." Besides fixing venue, this act directed how and upon whom process might be served in certain cases. The point at issue was the validity of that portion of the act regulating venue. In sustaining the act, as against appellant's point, our Supreme Court said: "But while the purposes for which this section was incorporated into the organic law have been kept steadily in view it has uniformly received a broad and liberal construction. And it has been often held to be a sufficient compliance with its provisions, if the law has one general object which is fairly indicated by its title, though it may embrace different subjects which are connected with or appropriate for the accomplishment of this general object.

In Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915, 916, 920, our Supreme Court, in sustaining the act of the Legislature there put in issue, as against appellant's point, said:

"We cannot sustain appellees' proposition that chapter 75 of the General Laws of the Thirty-Eighth Legislature is in conflict with section 35, art. 3, of the Constitution, upon the ground that it contains more than one subject, to wit, the subject,

regulations of motor vehicles upon the public roads and the subject of construction and maintenance of public roads. The general subject of the chapter is the construction, maintenance, and use of the public highways of the state. All its provisions are correlated with and incident to the maintenance and use of public roads. For discussion of the principle involved, see Cooley's Constitutional Limitations (7th Ed.), p. 209; McMeans v. Finley, 88 Tex. 515, 32 S.W. 524; * * * Breen v. Texas & P. R. R. Co., 44 Tex. [302], 306; Austin v. Gulf, C. & S. F. R. R. Co., 45 Tex. [234], 267; Stone v. Brown, 54 Tex. [330], 342." See also Consolidated Underwriters v. Kirby Lumber Co., Tex.Civ. App., 267 S.W. 703; Board of School Trustees of Young County v. Bullock School District, Tex.Com.App., 55 S.W.2d 538; Joy v. City of Terrell, Tex.Civ.App., 138 S.W. 213; Raymond v. Kibbe, 43 Tex.Civ.App. 209, 95 S.W. 727; Travelers' Protective Ass'n v. Ziegler, Tex.Civ.App., 250 S.W. 1115; Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543; Dodge v. Youngblood, Tex. Civ.App., 202 S.W. 116; Loving County v. Higginbotham, Tex.Civ.App., 115 S.W.2d 1110; Phillips v. Daniel, Tex.Civ.App., 94 S.W.2d 1193; Texas Liquor Control Board v. Warfield, Tex.Civ.App., 111 S.W. 2d 862; Consolidated Underwriters v. Kirby Lumber Co., Tex.Com.App., 267 S. W. 703; Board of School Trustees of Young County v. Bullock School Dist., supra; Eastern Kentucky Coal Lands Corp. v. Commonwealth, 127 Ky. 667, 106 S.W. 260, 108 S.W. 1138; Reed v. Auditor General, 146 Mich. 208, 109 N.W. 275; Auditor General v. Stiles, 83 Mich. 460, 47 N.W. 241; State v. Johnson, 116 Neb. 249, 216 N.W. 828; Rosenbloom v. State, 64 Neb. 342, 89 N.W. 1053, 57 L.R.A. 922; Forrest v. State, 154 Tenn. 13, 285 S.W. 589; Report of Commissioners, etc., 49 N.J.L. 488, 10 A. 363; McGhee v. State, 92 Ga. 21, 17 S.E. 276; Kentucky & West Virginia Power Co. v. Holliday, 216 Ky. 78, 287 S.W. 212.

■ On the authorities cited, a general revenue measure may cover the entire field of assessing revenue; it may set up the machinery for collecting it; it may allocate the revenue thus provided for to different state purposes; and it may make all necessary provisions incidental to, related to, or having any bearing upon the general subject of revenue collection. So, we overrule appellant's point that the

Omnibus Tax Law violates Section 35 of Article III of our Constitution.

What we have said also overrules appellant's contention that Article 5 of the Omnibus Tax Law violates the provisions of Article III, Sec. 35 of the Constitution, on the ground, among other things, that it levies an occupation tax on the various companies mentioned, located within the incorporated cities and towns referred to, and that it provides that such tax shall not be levied more than once on the same commodity.

Appellant further insists that Par. 3 of such Article is a separate and distinct subject matter and that there is intermingled in such paragraph a number of separate and distinct subject matters; this point is denied. Our statement of the general scope of this Act is a sufficient statement under this proposition. It should also be said in this connection that appellant makes no attack upon the caption of this Act.

Appellant's fourth constitutional point is that the Omnibus Tax Law attempts to appropriate money for a longer time than two years, "such attempted appropriations not being specific" in violation of Section 6 of Art. VIII and section 56 of Art. III of our State Constitution. This point is overruled. The appropriation or allocation of the taxes provided for by the Act was specific—it would serve no useful purpose to quote the language of the several appropriations. The appropriation or allocation of the taxes was incidental to the general subject of the Act.

A construction of the appropriation as continuing for a longer period than two years would not invalidate the Act. In Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W.2d 570, 580, our Supreme Court, denying appellant's point, said: "Still discussing the question as to whether this Act violates Section 6 of Article VIII of our State Constitution, we are of the opinion that, even if it should be held that such constitutional provision applies to the fund here involved, that fact would not invalidate the entire Act. The Legislature can comply with the above constitutional provision by making an appropriation each biennium of the money in the fund for the purposes for which it was collected, as defined by the Act."

Mr. Chief Justice Alexander, in his dissenting opinion in that case, said: "Under our Constitution there can be no such thing as a continuing appropriation for an indefinite period of more than two years. * * * I think that this last defect could be corrected by an appropriation each two years, but the defect first referred to appears to be incurable."

But the Act, Article 21, contains the following provisions:

"Sec. 5. If any Article, section, subsection, sentence, clause, or phrase of this Act is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of this Act.

"The Legislature hereby declares that it would have passed this Act and each section, subsection, sentence, clause, and phrase thereof irrespective of the fact that any one or more of the sections, subsections, sentences, clauses, or phrases should be declared unconstitutional." Vernon's Ann.Civ.St. Art. 7083b, § 5.

So, if it be conceded that the appropriations by the Act were for a longer period than two years, in violation of the Constitution, the provisions of the Act pertinent to this litigation would not be invalidated. Board of School Trustees v. Bullock School Dist., Tex.Com.App., 55 S.W.2d 538; Robbins v. Limestone County, supra; Ex parte Mehlman, 127 Tex.Cr. R. 257, 75 S.W.2d 689; Atkins v. State Highway Dept., Tex.Civ.App., 201 S.W. 226; Consumers' Lignite Co. v. Grant, Tex.Civ.App., 181 S.W. 202.

Appellant's points 10 to 16, inclusive, assume that the court erred in sustaining appellee's exception to the allegations of the petition challenging the constitutionality of the pertinent provisions of the Omnibus Tax Law, and on that assumption appellant makes the point that the judgment of the lower court should be reversed. What we have said above sustains the ruling of the court that appellant's petition was insufficient to challenge the constitutionality of the Omnibus Tax Law, and since appellant refused to amend its pleadings the judgment of dismissal necessarily followed. City of Lubbock v. Magnolia Petroleum Co., Tex.Com.App., 6 S.W.2d 80.

It follows that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.