SIBLEY v. STATE.

(*Knoxville.* September 21, 1901.)

1. CONSTITUTIONAL LAW. *Game and fish laws.*

A statute, enacted for the protection and preservation of fish in that portion of a particular river situate in a designated county, if otherwise free from infirmity, is not unconstitutional as arbitrary and capricious class legislation, although such river extended into other counties and there were other rivers in said county, none of which were subjected to like restraint or regulation. Such special legislation is authorized by that clause of the Constitution which provides that "the General Assembly shall have power to enact laws for the protection and preservation of game and fish within the State, and such laws may be enacted for and applied and enforced in particular counties or geographical districts designated by the General Assembly."

Constitution construed: Art. 1, Sec. 8; Art. 11, Sec. 13.

Act construed: Act 1899, Ch. 85.

Cases cited: Maney v. State, 6 Lea, 218; Peters v. State, 96 Tenn., 682.

2. SAME. *Same.*

But a statute forbidding the erection and maintenance of dams, essential to the operation of industrial plants, in such manner as to prevent fish from ascending or descending a river, is not such law for the protection and preservation of fish as may be applied and enforced as to that part of a river situate in a single county under said clause of the Constitution.

Constitution construed: Art. 1, Sec. 8; Art. 11, Sec. 13.

Act construed: Acts 1899, Ch. 85.)

FROM CARTER.

Appeal in error from Circuit Court of Carter County. H. T. CAMPBELL, J.

Sibley *v.* State.

Tipton & Miller for Sibley.

Attorney-General Pickle for the State.

Wilkes, J. The defendent (Sibley) is General Manager of the Watauga Lumber Company, a corporation constructing booms and doing business on the Watauga River, in Carter County and elsewhere. He is convicted of a violation of the Act of March 3, 1899. This Act is as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That no person, firm, or corporation shall hereafter erect or. build any dam or other obstruction across the waters of the Watauga River in Carter County, so as to prevent the free passage of fish up and down the waters of the same.

"Sec. 2. *Be it further enacted,* That all persons, firms, or corporations now owning or using any such dam or obstructions, whether for the purpose of booms or other use, shall immediately provide a sluice or waterway, not less than ten feet in width and five feet in depth of water, such sluice or waterway to be in and upon the natural bed of the river, or so cut and constructed as to make such flow or waterway upon the ground adjacent to such dam and natural bed of the river, for the free, easy, and unobstructed passage of fish up and down the waters of the same, which said way shall be kept open at all seasons of the year."

The company was incorporated under the laws of Tennessee in December, 1889, and again chartered September 25, 1897. The booms constructed by it enable it to float logs from various streams to the company's plant at Watauga, where they are manufactured into lumber. It has extensive tracts of land in North Carolina, does a large lumber business, and its plant is valued at $100,000. Defendant claims that there was a fishway left in the dam, constructed by it, sufficient and suitable for a passage-way for fish up and down the river, and that in no other way can the dam be operated to advantage except as now constructed.

The Court charged the jury, that if there was a waterway that afforded a reasonably free and easy passage for fish up and down the stream at at any and all seasons, then the Legislative requirement would be met, and the defendant would not be guilty, but if no such way was provided, and by reason thereof, fish were prevented from passing at any season, defendant would be guilty as charged.

Two assignments on the merits are made, one, that the evidence does not support the verdict, and the other, that the Act is unconstitutional.

While there is some conflict of evidence we think the case is made out that the passage of fish up and down the stream is materially interfered with by the dam, and that no sufficient passageway, as contemplated by the Act, is provided.

It is said the statute violates the provisions of Article 1, Section 8 of the Constitution of Tennessee, in that, it applies alone to Carter County, and to the Watauga river, in Carter County, and that such application makes a classification unnatural, arbitrary, and capricious ; that it tends to deprive the the Company of rights under its charter, and to a large extent impairs the value of its property and franchises. It appears from the record, that the Watauga, Doe, and Elk Rivers all run through Carter County, and the argument is that the Act should apply to all the rivers in the County or to the Watauga river in all the counties through which it runs. It is contended that the Act in controversy is authorized by Section 13, Article 11 of the Constitution of Tennessee, which provides ''The General Assembly shall have power to enact laws for the protection and preservation of game and fish within the State, and such laws may be enacted for, and applied, and enforced in particular counties or geographical districts designated by the General Assembly.'' Under this language the Legislature has the right to designate the locality in which fish and game laws shall be applicable, and may limit them to any geographical district, whether a county or less than a county, and whether in one stream or in a number of streams in the same county. Indeed, it may be very important for the protection of fish to apply the law to one stream and not to another, and to one portion of a stream

and not to other parts of the same stream. So in regard to game, it may be protected in one county, while across the line, not twenty feet distant, it may not be protected. We do not find any warrant in the language for holding that the Legislature must protect all the streams in any county, if it protects any, nor that it must protect the entire stream from head to mouth, when its object may be to protect it in only a certain county, part of a county, or other geographical district. . The limits of a geographical district may be fixed as to fish by the streams as well as by the boundaries of any land district, division, or county. *Mancy* v. *State*, 6 Lea, 218; *Peters* v. *State*, 12 Pickel, 682 (S. C. 33 L. R. A., 114.)

The proper construction of the constitutional provision is, however, a matter of much importance. It will be seen that the Constitution authorizes the Legislature to enact laws for the protection and preservation of fish and game, etc. Under this provision the Legislature has from time to time, and frequently, passed laws against the killing of game in certain seasons, and the taking of fish by traps, nets or seines, or their destruction by poison or dynamite; and all such laws seem appropriately to be in furtherance and accordance with the provision to protect and preserve game and fish. But it is difficult to see how this Act tends to protect and preserve fish. The existence of a dam or of a passageway does not tend to protect or preserve

the fish in the stream, but at most affects their free passage in the stream. It is true that by such dam fish above may be prevented from descending and fish below from ascending the stream, but neither of these things is in any way necessary to their protection or preservation. Indeed, such dams, by restricting the passage of fish, may tend to their preservation and protection, instead of being to their injury and destruction. The constitutional provision does not extend to the uniform distribution of fish along the course of the stream, so that people along its waters may have an equal chance to take and use them, but only to their protection against violence and wasteful taking and destruction. On the the other hand, it is a matter of judicial notice that our non-navigable streams are full of dams for the operation of mills and industrial plants, and the maintaining of such dams in their integrity is essential to the successful operation of the plants, as in this case.

It cannot be that the Legislature, under this constitutional provision, can authorize the cutting of these dams, which would result in the practical destruction of many of the plants in order that fish may have the liberty of the streams and be unimpeded in passing up and down them, when such passage is not shown in any way to be necessary or essential to their protection and preservation. There is ample scope for the operation of the provision without so construing it as to authorize the

Sibley *v.* State.

injury and destruction of industrial plants, much more valuable and essential to the public good than the fish that swim in the waters. Neither could farmers, under this constitutional provision, be required to leave apertures in their inclosures and fences in order that game might wander at will through the country.

We are of opinion that the Act in question is not authorized by the constitutional provision relied on, and that it is obnoxious to the Constitution and void because in conflict with Sec. 8 of Art. 1, and is partial, and not the law of the land. There was a demurrer to the indictment, which does not not appear to have been acted upon. There was also a motion in arrest of judgment. Each of these should properly have been sustained and the indictment quashed.

The judgment of the Court below is reversed, and indictment quashed.