**TENNESSEE CONSERVATION LEAGUE, Plaintiff–Appellant,**

v.

**W.J. Michael CODY, et al., Defendants–Appellees.**

Supreme Court of Tennessee, at Nashville.

Sept. 21, 1987.

Rehearing Denied Dec. 7, 1987.

Alfred H. Knight, William R. Willis, Jr., Willis & Knight, Nashville, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Mary E. Walker, Asst. Atty. Gen., Nashville, for defendants-appellees.

OPINION

THOMAS A. GREER, Jr., Special Justice.

This is a suit for Declaratory Judgment contesting the Constitutionality of the statutes regulating the hunting and taking of raccoons and training coon dogs. *TCA* § 70–4–112 and 70–4–122. The Constitutionality of this Legislation is challenged on two (2) grounds. The first ground asserts the respective statutes constitute an arbitrary, capricious and unreasonable exercise of the Legislature's authority under Article XI, Section 13 of the Tennessee Constitution, in that it is not rationally related to the Constitutional purpose of "preserving and protecting" wildlife. The second ground asserts since it is not a valid exercise of the authority granted by Article XI Section 13, the geographical specificity of its application violates Article XI, Section 8 of the Tennessee Constitution.

The Chancellor upheld the Constitutionality of the statutes, finding that they were rationally related to the Constitutional purpose of "preserving and protecting" wild-

life and since Article XI, Section 13 permits geographical specificity in Legislation on this subject, Article XI, Section 8, prohibiting "special" Legislation was inapplicable. Therefore, the Chancellor found the geographical specificity of the raccoon statutes did not render them unconstitutional. We concur with the Chancellor's decision.

We must consider two material presumptions which must also be weighed on the scales of judgment. This Court has often held that it must resolve every reasonable doubt in favor of the Constitutionality of Legislative enactments and there is a strong presumption in favor of their Constitutionality. *State ex rel Maner v. Leech*, 588 S.W.2d 534 (1979). Rule 13(d) of our *Rules of Appellate Procedure* pronounces that finding of fact by the Trial Judges are presumed correct unless the preponderance of the evidence is otherwise.

Article XI, Section 8 of the Tennessee Constitution generally prohibits the Legislature from passing any law for the benefit of individuals inconsistent with the general laws of the land. It has been most generally described as prohibiting the passage of class Legislation, although the exceptions are so numerous the effect is greatly diminished except in the most arbitrary instances. This provision is almost identical to Section 7 of this Article in the Constitution of 1834, especially in relation to the prohibition here relied upon. Section 13 of this Article is as follows:

> "The General Assembly shall have power to enact laws for the protection and preservation of Game and Fish, within the State and such laws may be enacted for and applied and enforced in particular Counties or geographic districts, designated by the General Assembly."

This section originated with the 1870 Constitution. Few reported cases are to be found discussing this Section. The compelling impression by the specific words in Section 13 is the exemption of any law thereunder for the protection and preservation of Game and Fish from the limitations imposed in Section 8. It is true, the words "protection and preservation" place some restriction on the Legislature's right to pass what might otherwise be determined to be class Legislation but there are no other limitations.

*TCA* § 70–4–112 was enacted in 1953 and provided that raccoons could be chased with dogs at any season of the year, but limited the killing to a season set by the State Wildlife Agency. *TCA* § 70–4–122 generally declares that it shall be unlawful to train coon dogs by chasing raccoons in West Tennessee except during the thirty (30) days immediately next preceding the opening of the season under the general laws of the State for hunting raccoons, but specifically excluded six West Tennessee counties from this provision. There were also, within the provisions of this section, nineteen counties where the rights were either further restricted or expanded from the general provisions thereof. In five of the nineteen counties the right to train coon dogs by chasing was further restricted and in fourteen the training of coon dogs and chasing of raccoons was expanded.

As previously stated, the general objection by the appellant is that the multitude of exceptions to the general rule in both statutes do not protect or preserve the game and fish of this State, and in particular the raccoons. It is unnecessary to attempt to summarize the testimony of all of the expert witnesses in this case. The apparent object of the testimony was to prove the two statutes in question did not and could not protect or preserve raccoons. One might conclude from this testimony the Legislature did not choose the very best means to protect and preserve the raccoon population. However, without question, it cannot be said these statutes do not "tend" to preserve and protect the raccoon population. This is the criterion by which a Court must determine whether there is any reasonable connection between the statutes and the purposes announced in the Constitutional provision.

Perhaps Article XI, Section 13 of the Tennessee Constitution, is an ideal subject by which rules of constitutional interpretation may be tested. At least this is true if the theory of original intent is con-

856

sidered. It is now difficult to know the view held in 1870 of the desire or perceived desire to preserve and protect the wild game of this State. In 1870 counties were still paying bounties for animals then considered undesirable predators. Now, some of these same species are being protected or re-established. This is being done in accordance with present actual or perceived needs or values. We agree with TCL that original intent cannot be the guide to construe this provision of the Constitution, but conditions prevailing at and before that time may be circumstantially enlightening. The words used in the Constitution are very brief and general. Then and as now, it is evident many factors should be considered in restricting the geographical extent of any regulation in this matter. It requires little imagination to recognize the difference in need or wish to regulate chasing or taking raccoons or deer in downtown Nashville as compared to the river bottom land in West Tennessee or the mountains and hills of East Tennessee.

■ TCL contends the frequent changes in the law relative to raccoons is evidence of a careless disregard of this Constitutional mandate. If the Court has counted correctly, there have been 51 Acts of the Legislature affecting raccoons since 1955. During approximately one-half of the intervening time the Legislature met every other year. Perhaps the Federal Internal Revenue Code is the only other law so often amended. Frequence of amendment cannot be used as evidence of Legislative irresponsibility. It is most probably evidence of an attempt to resolve a problem with conflicting and variable objectives or intense petitions by citizens with different views and interests. These conditions are pervasive throughout all the Legislative halls of this country, and are not Constitutionally prohibited.

■ Although many of our immediate needs have changed since 1870, it would be most difficult to articulate a generally desirable Constitutional objective with more specificity than that used and which is the subject of this controversy. This is especially true where the changing circumstanc-

es and demands are so constant to require frequent amendments to keep a balance. The first Legislative Act was not enacted for 33 years after the adoption of the 1870 Constitution, according to dicta in the next cited case.

In 1909, the Supreme Court of this State determined that an act affecting game and forest was unconstitutional because it involved two subjects and accordingly was in violation of Article II, Section 17 of the Tennessee Constitution. *Acklen v. Thompson*, 122 Tenn. 43, 126 S.W. 730 (1909). If this Act had been judged in light of the long history of game laws, a different result might have been reached, because for a long time forest and game were treated coeval. This is an example of one reason why courts should treat Acts of the Legislature with such deference.

In 1826 Richard Thompson, an authority on early English law, wrote a widely published Essay on Magna Charta of King John, in which he observed: "King John would have been as reluctant to affirm the Charter of Forests as he was to ratify the Charter of Liberties, but the former instrument was at length granted in the ninth year of his successor, King Henry, III." The Forest Charter was actually signed in 1224. (*Magna Charta*, 1982 reprint by The Legal Classics Library, Bmgham, Ala.) In other words, the relief accorded the average Englishman relative to hunting and taking game and fish came with more reluctance than personal civil rights. The relief there granted is difficult to understand today. The primary significance of the Forest Charter was the reduction of punishment from death to a fine for the taking of almost any game by a commoner. The right to take game in that day was almost always a royal prerogative. The concepts of the right of the state and the individual generally acceptable today did not occur over-night. This subject has been highly controversial before our Constitution was adopted.

*Sibley v. State*, 107 Tenn. 515, 64 S.W. 703 (1901) involves Legislation prohibiting the erection of a dam or other obstructions across the waters of Watauga River which

would prevent free passage of fish. It was contended Article XI, Section 13 provided authority for this Act. Unless certain fish were present which required free passage for spawning, the impounding of water could only increase the area for fish propogation. However, certain fish are only found in fast flowing streams. In any event, the Court there concluded this prohibition could not be rationally related to "preserving and protecting" fish and did violate Section 8 of the Constitution. This case can readily be distinguished from the Legislation under question here.

As our society becomes more populous, sophisticated and affluent, our values change, as has been true for all of recorded history. The people of this State, assembled in the Constitutional Convention in 1870, invested the Legislature with the power and discretion to implement these values from time to time. For this Court to impose its judgment or discretion in this case would be a usurpation of a judgmental act specifically granted to the Legislature.

We know of no other discipline where it is insisted the Legislature is bound to follow the opinions of the best experts in the given field. This certainly is not true in taxation, finances, public health, schools, or other areas of governmental regulation, all of which seem to be responsive to more exact standards. Difficulty or the impossibility of enforcement or the general public's acceptance or perception of laws are all valid conditions which the Legislature must or may consider. TCL apparently considers the Constitutional powers here granted to limit the exercise of the discretion of the Legislature as is the restriction of the discretion on the Department of Interior or Commerce under the Federal Endangered Species Act. This concept is wrong. Constitutional provisions paint with a wide brush leaving details and coping with changes in conditions from time to time a function of some governmental department. The right to exercise discretion of necessity carries with it the power of error.

The earnest and almost persuasive arguments of TCL have been seriously and de-liberately weighed but this Court has concluded sound Constitutional principles compel it to leave the protection of the raccoon population and training of coon dogs in the hands of the Legislature so long as there is a viable causal connection between their action and this Constitutional provision.

The Chancellor concluded that the Appellants did not carry the burden of proof showing that *TCA* § 70–4–112 and § 70–4–112 are not related to the preservation and protection of raccoons in Tennessee. Without indulging the presumption of correctness, we concur with his conclusion and affirm the judgment of the Court below. Cost incurred on this appeal are taxed against the Appellants and their sureties.

BROCK, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.

### OPINION ON PETITION FOR REHEARING

A petition for rehearing has been filed on behalf of appellant suggesting the evidence supports only the conclusion the statutes will lead to the inevitable extinction of the raccoon in Tennessee. This contention was forcefully and ably asserted at the trial below and in the Brief filed in support of this appeal.

We considered all of the evidence admitted on trial and resolved that the Chancellor should be sustained. No new issues are presented by this petition. The Court adheres to the position stated in the original opinion.